## BROWN vs. WILLIAMS.

Assumpsit for money had and received will lie by an endorser of a note against the holder, to *recover back* money paid under a judgment against such endorser, where the holder previous to the payment makes an arrangement with a *prior endorser*, by which he discharges him, or enters into a covenant *not to sue him.*

The rule which governs as to the effect of a discharge or the varying the contract of a *principal debtor* by a creditor, without the concurrence of the surety, applies to the discharge of a *prior endorser;* the subsequent endorsers are discharged in cases where the surety would be discharged.

A prior endorser in reference to subsequent endorsers stands in the place of a principal debtor; his discharge, or a covenant not to sue him, releases the subsequent endorsers.

Bill of particulars. Question of variance between bill and proof.

THIS was an action of assumpsit, tried at the New-York circuit in December, 1828, before the Hon. OGDEN ED-WARDS, one of the circuit judges.

The declaraction contained the usual counts in *indebitatus assumpsit* for money had and received, &c. The plaintiff furnished a bill of particulars stating that the action was brought for money had and received by the defendant from one Oliver Dubois, on a note drawn by Samuel Ellison for $300, dated 6th May, 1816, payable to Dubois or order at the Bank of Newburgh, six months after date; which note was endorsed by Dubois and subsequently by the plaintiff and by the defendant, and upon which note the defendant received $300 from Dubois, and also the *same sum*, with costs and interest, from the plaintiff. The action was therefore brought to recover the $300 alleged to be thus fraudulently received, and the costs and expenses of the plaintiff and the interest of $300 from the time of payment by Dubois, which was alleged to have been made on the 5th June, 1820.

On the trial of the cause, the following facts appeared: On the 6th May, 1816, a note was made by one Samuel Ellison for $300, payable to Oliver Dubois or order six months after date; this note was endorced by Dubois, and subse-

quently by the plaintiff, and after the plaintiff's endorsement it was endorsed by the defendant *in blank* for the accommodation of Dubois. The defendant caused a suit to be commenced against the plaintiff, as second endorser of the note, *in the name of one Samuel Williams* as plaintiff, in which a judgment was recovered on the 18th April, 1817, for $360, 33; subsequently a *ca. sa.* was issued, directing the sheriff to receive $331,83, with interest on $313,91, from 13th December, 1817, on which the plaintiff was arrested in New-York, and gave a bond for the limits and escaped. The sheriff was sued for the escape, and a judgment recovered against him for $331,83 debt and $115,37 costs, on the 8th May, 1820. The surety for the limits, at the request of the plaintiff in this cause, paid the sheriff $548,66 on the 1st September, 1820; of which sum $331,83, together with $14,99, the interest thereof, was paid to the attornies of the plaintiff in the suit against the sheriff. The surety has been repaid the money thus advanced for the plaintiff.

The plaintiff produced a *covenant* under seal executed by the defendant, bearing date 5th June, 1820, entered into by him with *Oliver Dubois ;* by which, after reciting the making of the above note by Ellison, and the endorsement of the same by Dubois and by the plaintiff and by the defendant, and that a suit had been commenced by the defendant against Dubois to recover, among other things, money paid by him in consequence of his endorsement of that note, and that a settlement had been made by Dubois with him of his claims against Dubois, and, among others, his claim in reference to the note, the defendant covenanted never to sue, molest or trouble Dubois upon the note, or on account of any monies paid by the defendant in respect to the same, and to keep Dubois harmless and indemnified from any suit upon or in virtue of the note, to be brought by any person whomsoever. He also released and discharged the suit commenced by him against Dubois, and acknowledged the settlement to include all other claims and demands upon Dubois, and released and discharged him therefrom. The subscribing witness to this instrument testified that the settlement between

the defendant and Dubois was made in private; that the de-
fendant had several claims against Dubois besides the note of
Ellison; that Dubois told him it was a trading settlement;
that upon the release being executed, the defendant receiv-
ed from Dubois a pair of horses, and Dubois received from
the defendant a horse and wagon, and he (the witness) did
not know that the defendant received any thing from Dubois
except the horses. It was also proved, on the part of the
plaintiff, that about $100 was paid by *Ellison* on a judgment
obtained against him as the maker of the note endorsed by the
parties, *in the name* of Samuel Williams as plaintiff.

The plaintiff having rested, the defendant moved for a non-
suit on the grounds, 1. That an action for money had and
received, under the circumstances of the case, could not lie
in the name of the plaintiff; that the suit ought to have been
in the name of the sheriff, or the plaintiff ought to have
brought a special action on the case; 2. That there was a
variance between the proof and the bill of particulars. The
judge refused the motion.

The defendant then offered to prove that in the settle-
ment between him and Dubois nothing was paid to him up-
on or on account of the $300 note, and that the whole
payment made by Dubois in the delivery of the horses was
in the settlement of other demands which the defendant
had against him independent of the note. And he further
offered to prove that the plaintiff had in the month of June,
1820, made a settlement with Oliver Dubois, and had re-
ceived payment and satisfaction of the note from Dubois
for and on account of his (Dubois') liability as a prior en-
dorser thereof, and had discharged him therefrom. The
judge refused to receive the evidence thus offered, ruling it
to be irrelevant and inadmissible, and charged the jury that
the covenant of the defendant not to sue Dubois upon the
note was, by operation of law, a release of the liability of the
plaintiff, and entitled the plaintiff to recover back the money
paid under the judgment and execution against him; that
proof of the covenant of the defendant was admissible under
the bill of particulars, and that the plaintiff was not bound to
prove the payment of any money by Dubois to the defend-

ant; and he therefore directed the jury that the plaintiff was entitled to their verdict for the sum of $346,82, the principal and interest of the *ca. sa.* issued against him, together with the interest thereon. The jury found a verdict accordingly, subject to the opinion of this court.

*W. W. McCleland & P. Ruggles* for the plaintiff, contended that the covenant admitting that the defendant had *settled* with Dubois all claims as well on account of the *note* as all others demands which he had against him, should be considered a *release,* and not simply a *covenant not to sue;* and that the first endorser having paid and settled the note, the money pay by the second endorser in ignorance of the fact of payment by the first endorser, ought to be allowed to be recovered back in an action for money had and received. They also insisted that the defendant as the holder of the note had varied the contract, and that therefore the plaintiff as a subsequent endorser was discharged. They cited Chitty on Bills, 371, 372, 374; 16 Johns. R. 41 ; id. 70; 18 id. 26; 11 Vesey, 410; 2 Bos. & Pul. 61; 8 East, 576; 2 Johns. C. R. 554, 560. As to the bill of particulars they cited 3 Starkie on Ev. 1058; 2 Saund. on Pl. and Ev. 699, 700.

*D. Ruggles,* for defendant. The covenant of the defendant *not to sue* Dubois did not release the plaintiff, nor impair the rights of the defendant to collect the money. The rule that a covenant not to sue shall operate as a release obtains only as between the convenanto and convenantee. (2 Saund. 48 a. n. 1. 2 Salk. 575.) Where two are bound *jointly and severally,* and the obligee covenant with one of them not to sue him, it does not amount to a release, but is a covenant only, and the obligee may still sue the other obligor. (2 Saund. 48, a. n. 1. 17 Mass. R. 584. 5 Bibb, 247. 6 Munf. 8. 2 Johns. R. 449, 50.) He may do so, though the party with whom the covenant be made be the principal debtor and the other only surety. (8 T. R. 168.) A formal technical *release* to one of two obligors discharges both, not so a covenant not to sue. If a covenant not to sue one of two joint obligors will not be regarded as a release, how can such a

covenant with one endorser discharge another ? It is only when the holder does an act destroying or impairing the remedy of the endorsers, that they are discharged. A covenant not to do that which it is rightful to omit, cannot deprive a party of a remedy which he whould have been entitled to, had he not entered into the covenant. The holder of the note in this case might omit to sue either one of the endorsers without affecting his rights against the others. Had the covenant been made before suit brought against the plaintiff he could not have pleaded it in bar ; for, notwithstanding the covenant the plaintiff after a recovery against him had his right of action against Dubois. (5 Esp. R. 178.) Here, however, it was made not only after suit brought, but after a judgment against the plaintiff, and another judgment against the sheriff for the escape of the plaintiff on a *ca. sa.* both which judgments where in full force at the making of the covenant with Dubois. How could the covenant affect those judgments ? A release to Dubois could not have reached them.

The action for money had and received cannot be maintained, because there is no proof that the defendant has been *twice* paid, once by Dubois and a second time by the defendant ; the evidence in the case and the release itself shews the contrary ; it is only on the ground of a technical release, if at all, that the plaintiff supports his case ; this shews no equity in his case.

If the covenant operated as a release, then the payment was *voluntary*, and the plaintiff is precluded from recovering back money, the payment of which he might have avoided by application to the court on motion. There was sufficient time for the purpose ; the covenant bears date 5th June, and the payment was not made until 20th September. The money having been paid under the legal force of the judgment against the plaintiff, and he having amitted to avail himself of the remedies which the law afforded him against its payment, he cannot now recover it back. (7 T. R. 269. 8 Johns. R. 470. 9 id. 232, 244.) Ignorance of the law entitling him to relief is no excuse. (2 Saund. Pl. 675. 6 Barn. & Cres. 677. 1 Wendell, 360.) Ignorance of the fact of the payment by Dubois is not shewn, although to render it available it ought

affirmatively to have been proved. (1 Wendell, 360.) The payment therefore was voluntary and the money cannot be recovered back. (1 Esp. R. 278, 284. 2 id. 572, 723. 3 Bos. & Pul. 520. 5 Taunton, 147. 1 Maule & Sel. 610. 4 Barn. & Cres. 290. 6 Dowling & Ry. 288. 1 Wendell, 355.) The variance also was material between the bill of particulars and the proof, and for that cause the plaintiff is not entitled to recover. (3 Esp. R. 168. 2 Bos. & Pul. 243. 4 Esp. R. 7.)

NEW-YORK, May, 1830.

Brown
v.
Williams.

The evidence offered on the part of the defendant to shew that no payment was in fact made on the note by Dubois ought to have been received; it would have totally destroyed the foundation of the plaintiff's action, by shewing that the defendant had never received but one satisfaction of his demand. The other offer also ought to have been received; it would have shewn that the plaintiff had not been injured by any act done by the defendant; that the plaintiff had not been deprived of his remedy against Dubois, inasmuch as he had already been indemnified by Dubois, and therefore could not again call on him.

*By the Court,* SAVAGE, Ch. J. The action for money had and received is an equitable action, and, generally speaking, lies in all cases where the defendant has received money, or in some cases its equivalent, which in equity and good conscience he ought to pay the plaintiff. If it be conceded that the defendant has received payment of the note on which he was the holder from Dubois, and afterwards from the plaintiff, a case is presented in which the plaintiff ought to recover back from the defendant the money thus improperly received. Whether the instrument produced is evidence of such payment by Dubois to the defendant, or discharges Dubois from all liability on the note, is the principal question in this case.

It seems to be conceded by the defendant's counsel that if the instrument operates as a release, it discharges Dubois from his liability to the plaintiff; but he contends that it is a mere covenant on the part of the defendant not to sue Dubois, and leaves him liable to the other parties. The propo-

sition is not denied, that where a creditor covenants *not to prosecute* one of several joint and several obligors or promissors, the others remain liable to an action; but if the creditor *releases* such obligor or promissor, his claim is gone upon all of them; and the reason is that the release discharges the debt itself, but the covenant not to sue one leaves the debt in existence, and merely exempts the covenantee from prosecution. If, however, a creditor covenant not to sue an individual debtor who is solely liable, such covenant has the effect of a release, though not such technically. It may be pleaded in bar to avoid circuity of action. (2 Salk. 575.) The present is not a case of joint and several promissors; each party to the note is liable severally, but not jointly. The maker of a promissory note, when nothing appears to the contrary, is considered the principal debtor, and the endorsers are surities; (16 Johns. R. 73;) but not exactly co-sureties. No joint action can be maintained against them; each must be made severally responsible. There may be cases, and such we have by particular statutes, where a joint action may be brought against all the parties responsible upon a note: I am speaking of the liability of parties in ordinary cases.

The holder of a note may prosecute the maker and endorsers in separate suits, but he can have but one satisfaction. If he collects his money from the principal debtor, he cannot afterwards maintain a suit against the endorsers. Their engagement was that the money should be paid; and when that is done, their liability ceases. Should either of the endorsers be compelled to pay the money, he becomes the creditor, and has a right to be reimbursed from the principal debtor, or prior endorsers if any. If therefore the holder releases the principal debtor, he ought not to recover against the endorsers; for by releasing the debt, he discharges the principal from all liability upon the note to the endorsers, as well as to himself. If a holder covenant not to sue one of two joint and several makers of a promissory note, he may sue the other; for he remains liable while the debt remains; but if the creditor covenant not to sue a sole maker of a note, I know of no means of compelling payment. Sup-

pose he has a written guaranty from a third person that such maker shall pay his note, and he covenant not to sue such maker, can he be permitted to prosecute on his guaranty after he has covenanted that the maker shall not be compelled to pay? The law, I trust, does not tolerate such injustice. It will not permit him to do indirectly what he has covenanted not to do directly. If he may be permitted to recover of the surety, he (the surety) must have his remedy against the principal, who will thus be compelled to pay where the creditor had covenanted that he should not be so compelled. It will hardly be contended that the surety shall pay, and yet have no remedy against his principal.

But it is not necessary in this case to maintain that proposition. This is the case of a negotiable instrument, and the rights and liabilities of the parties to such an instrument have often been considered, and are well defined. I have had occasion recently to refer to some cases on this subject, (9 Cowen, 206,) and I then quoted the rule as laid down by Chancellor Kent, (2 Johns. C. R. 560.) It is this: " The surety is entitled to pay the debt when it becomes due, or he may call upon the creditor by the aid of this court to enforce his demand against the principal debtor. On paying the debt, he is entitled to the creditor's place by substitution. If the creditor, by agreement with the principal debtor without the surety's consent, has disabled himself from suing when he would otherwise have been entitled to sue under the original on tract, or has deprived the surety on his paying the debt from having immediate recourse to his principal, the contract is varied to his prejudice, and he is consequently discharged. This is the true principle to be extracted from the cases." Chief Justice Spencer says, "If the holder does an act which takes away and destroys the remedy of the other parties against the maker upon the very bill, he forfeits his right to call upon the prior endorsers. (16 Johns. R. 42, 3.) And again, the surety is bound by the terms of his contract; and if the creditor, by agreement with the principal debtor without the concurrence of the surety, varies these terms by enlarging the time of performance, the surety is discharged; for he is injured, and his risk is in-

NEW-YORK,
May, 1830.

Brown
v.
Williams.

creased. (16 Johns. R. 73. 3 Brown's C. 3. 11 Ves. 410.) These cases speak of discharging or varying the contract with the principal debtor. The same rule is applicable to the discharge of any prior endorsers: the subsequent endorsers are discharged. In English v. Darby, (2 Bos. & Pul. 62,) Lord Eldon, speaking of the case of Hayling v. Mulhall, (2 Black. R. 1235,) says, " Had the plaintiff first sued a prior endorser and discharged him from execution, it would have afforded a sufficient objection to an action against a subsequent endorser." And see 3 Bos. & Pul. 365, 6, and note.

The covenant executed by the defendant speaks of Dubois as the principal debtor, the note being endorsed for his accommodation; but if he was not, the agreement not to sue him diminished the security of the subsequent endorser. If the holder, who was the defendant, thought proper to collect the money from a subsequent endorser, as the plaintiff was, the plaintiff, on payment of the money, was entitled to the creditor's place by substitution; but when he assumed that place he found the security of a prior endorser discharged, and that might be the very security upon which he relied in becoming an endorser. At all events, his risk was increased by the acts of the holder, and that is sufficient to discharge him.

The objection that the plaintiff should have sought relief on motion, is of no weight; he was not bound to pursue that remedy; and he had no opportunity of pleading a defence to the action against him, for while it was pending Dubois was not discharged from his liability.

It is said the payment by Lupton was voluntary. The money was paid by Lupton at the request of the plaintiff; it was therefore paid by the plaintiff, against whom a judgment had been recovered. If this is voluntary, then every payment is voluntary, unless property is sold by the sheriff.

The objection of variance is not tenable. A bill of particulars is indeed considered, in some respects, an amplification of the declaration, but it is considered sufficient if it fairly apprize the opposite party of the nature of the claim, so that there can be no surprize. Here the defendant was in-

formed that the money which the plaintiff had paid was sought to be recovered back ; and though it speaks of $300 paid by Dubois, still, if the transaction amounted in law to a payment or discharge or release of that sum, there could have been no surprize.

I am opinion, also, that the defence offered was properly rejected; the first part, because it was to contradict the defendant's own written and sealed agreement, and as to the second, if Dubois had previously paid the plaintiff, that might perhaps give Dubois a remedy against him, but could have no influence upon the plaintiff's right to recover back money which the defendant had unlawfully obtained from him.

The plaintiff is entitled to judgment for the amount paid by him with interest till judgment.