DELAPLAINE and another *v.* HITCHCOCK and others.

Although the liability of a surety is reduced to a judgment against him, yet his rights of subrogation and substitution continue; and the creditor cannot give time to the principal without discharging the surety.(*a*)

M. H., by plea, set up that he was, with the knowledge of the complainants, a surety only on the notes of J. W. H. and J. A. M.; that, after judgments against him and them obtained by the complainants on the notes, the latter, by written agreement with the said J. W. H. and J. A. M. and without his (M. H.'s) consent compromised for $30,000 (including the judgments), giving upwards of four years within which to pay and covenanting not to sue them in the meantime; and also, during such time, receiving $5,000 in part of the $30,000. *Held* that the mention of the $5,000 did not render the plea bad for duplicity; and that such plea was a good plea.

JUDGMENT creditor's bill filed by John F. Delaplaine and Elijah P. Delaplaine against Miles Hitchcock, John W. Hinton and James A. Moore. It was founded on two judgments: one recovered against the said Miles Hitchcock in the superior court of the city of New York for three thousand two hundred and twenty-six dollars and twenty-eight cents and the other obtained in the same court against the said Miles Hitchcock, John W. Hinton and James A. Moore for the sum of two thousand dollars.

The defendant Miles Hitchcock interposed the following several plea (after the usual heading and protestation):

"—— Doth plead thereto and for plea saith, that the said judgment recovered by the said complainants against this defendant in the superior court of city of New York in the said bill of complaint first mentioned was recovered against this defendant upon a certain promissory note made by this defendant to his own order and by this defendant endorsed in blank, dated, New York November twenty-third one thousand eight hundred and thirty-three, by which this defendant promised to pay, six months after the date thereof, to his own order three thousand dollars for value received, and

Oct. 31,
1843.

Pleading.
Plea.
Principal
and Sure-
ty.

(*a*) And see *Bangs* v. *Strong*, 10 Paige's C. R. 11; and S. C. in Error, 7 Hill's R. 250.

for or upon no other, different or further cause or causes of action whatever, as by the record of the said judgment remaining in the office of the clerk of the said superior court will more fully appear and to which this defendant prays leave to refer. And that the said judgment, so recovered against this defendant and John W. Hinton and James A. Moore in the said superior court of the city of New York, as in the said bill of complaint is set forth, was recovered upon a certain other promissory note, dated New York, January twenty-fourth one thousand eight hundred and thirty-four made by the said Hinton and Moore and endorsed by this defendant, whereby the said Hinton and Moore promised to pay, ninety days after the date thereof, to the order of this defendant, twenty-two hundred and thirty-two 81-100 dollars value received and for or upon no other, further or different cause or causes of action whatsoever, as by the record of the said last mentioned judgment remaining in the office of the clerk of the said superior court will more fully appear and to which this defendant prays leave to refer. And that the said note for three thousand dollars, first above mentioned, was made and endorsed by this defendant, and the said note last above mentioned was drawn by the said Hinton and Moore and endorsed by this defendant at the request of and for the accommodation of one John A. Moore of the city of New York, merchant, without any value or consideration therefor ever received by or paid, promised or secured to this defendant by the said John A. Moore or any other person or persons therefor ; but for the sole purpose of becoming, by means of the said note and the said endorsement, the surety of him the said John A. Moore and the said Hinton and Moore to enable him the said John A. Moore to effect a certain agreement then made or pending between him and the said complainant, whereby they, the said complainants, had agreed or did agree to advance to him the said John A. Moore certain notes or obligations of them the said John F. Delaplaine and Elijah T. Delaplaine on receiving, as collateral security to the obligation or liability of the said John A. Moore therefor, among other things, the said above mentioned promissory notes on which the two judgments were recovered as aforesaid then to be obtained or ob-

tained by the said John A. Moore from this defendant and
the said Hinton and Moore as his sureties. And further
that, after the making and endorsement of the said two pro-
missory notes, the same were delivered to the said John A.
Moore to be used for the purpose aforesaid and were by him,
the said John A. Moore, afterwards delivered and negotiated
to the said complainants with other notes and securities for
their notes or obligations in pursuance of the said agreement
so made as aforesaid between them and the said John A.
Moore. And further that, as this defendant is informed and
believes to be true and charges, at the time of the negotia-
tion and delivery of the said two promissory notes to the said
complainants by the said John A. Moore as aforesaid and
at and before the time of the recovery of the said two judg-
ments thereof and at and before the nineteenth day of June,
1839, the time of the making of the agreement hereinafter
mentioned, the said complainants had notice and well knew
that the said two promissory notes were respectively made
and endorsed by this defendant for the purpose aforesaid
and entirely without any consideration paid, promised or se-
cured to him by the said John A. Moore or any other person
or persons, but solely for the accommodation of the said John
A. Moore and Hinton and Moore and as the surety of the
said John A. Moore as aforesaid. And further that, after the
recovery of the said judgments and on or about the nine-
teenth day of June 1839, as this defendant is informed and
verily believes to be true and as appears from the indenture
hereinafter mentioned—a counterpart whereof, executed by
the said complainants, has been exhibited to and seen by
this defendant—the said complainants, by a certain indenture
of the date last mentioned made between them and the said
John A. Moore, sealed with their seals and with the seal of
the said John A. Moore, after reciting, among other things,
the recovery of the two judgments aforesaid against this de-
fendant and against this defendant and the said John W.
Hinton and James A. Moore, among other judgments against
the said John A. Moore and others—and that the said com-
plainants had theretofore commenced a suit in the superior
court of the city of New York against the said John A.
Moore for a balance of account which was then pending and

in which it was agreed that the said John A. Moore should, on the execution of the said indenture, give a relicta and cognovit for the whole balance claimed to be due and the said complainant should enter up judgment thereon, did, in consideration of the covenants and agreements thereinafter contained on the part of the said John A. Moore and of one dollar to them in hand paid by the said John A. Moore, covenant and agree to and with the said John A. Moore that they the said complainants, their heirs, executors and administrators should and would, at any time or times, on or before the first day of October in the year eighteen hundred and forty-three, receive and accept from the said John A. Moore his heirs, executors or administrators the sum of thirty thousand dollars, which said sum, when paid as aforesaid, should be in full of claims and demands, debts, dues, judgments and recoveries recovered by or belonging to or claimed by the said complainants (so far as the same were unpaid and unsatisfied at the date of the said indenture) against the said John A. Moore, John W. Hinton, James A. Moore and this defendant or any or either of them from the beginning of the world to the day of the date of the said indenture ; and, upon the payment of the said sum of thirty thousand dollars by the said John A. Moore to the said complainants, should and would satisfy and discharge from record, at the costs and expenses of the said John A. Moore, the said several judgments in the said indenture above recited and the judgment to be entered up for the balance claimed to be due, reserving the liability of all other persons except the said John A. Moore, John W. Hinton, James A. Moore and this defendant for the benefit of the said complainants. And that, upon receiving a relicta and cognovit from the said John A. Moore for the sum of one hundred and eighteen thousand three hundred and six dollars and seventy cents the balance claimed to be due on said account with the interest thereon in the said suit therein recited then pending and undetermined in the superior court of the city of New York and upon the execution of the said indenture, they the said complainants should and would surrender and deliver up all and singular the bonds, bills, notes, checks and other evidences of debt (excepting the judgments therein above mentioned se-

verally and respectively and the judgment to be entered upon the said relicta, which it was declared were to be and remain in full force and effect and continue a lien as though the said indenture had not been made until the full performance of the covenants therein contained on the part of the said John A. Moore) of the said John A. Moore, John W. Hinton, James A. Moore and this defendant, excepting thereout such bills or notes or evidences of debt upon which other persons or parties than the lastly above named might be liable to them the said complainants thereon, which liability of said other persons or parties was to be retained by the said complainants without further recourse to the said John W. Hinton, James A. Moore, this defendant and John A. Moore or any or either of them, excepting upon the judgments therein mentioned and the judgment to be entered upon the said relicta and cognovit and then only in the event of the non-performance of the said indenture by the said John A. Moore. And that, in and by the said indenture, the said complainants did, among other things, covenant and agree to and with the said John A. Moore his heirs, executors and administrators that, from the date of the said indenture until the first day of October in the year eighteen hundred and forty-three, they, the said complainants, should not nor would take, institute or move, nor would suffer to be taken, instituted or moved any step, measure or proceeding upon the said judgments therein before recited or the judgment to be entered up thereupon or any or either of them against the said John A. Moore, John W. Hinton, James A. Moore or this defendant or any or either of them for the recovery of the money due thereon or any part thereof or to molest, hinder, trouble, vex or harrass the said John A. Moore, John W. Hinton and James A. Moore and this defendant or any or either of them unless the said John A. Moore should depart this life before the said first day of October 1843, without having duly made payment of the said sum of thirty thousand dollars previously thereto or in case the same should not be subsequently thereto and before the said time paid by his representatives, as by the said indenture will among other things more fully appear, to which indenture when produced and proven this defendant prays leave to

refer. And this defendant further saith that, as he is inform-ed and verily believes to be true and charges, the relicta and cognovit in the said indenture mentioned was, on the exe-cution of the said indenture, given by the said John A. Moore to the said complainants in pursuance of the terms of the said indenture and that judgment was afterwards, by the said complainants, entered up thereon, and that the judg-ments against the said John A. Moore in the said indenture recited together with the judgment so entered up on the said relicta and cognovit include all and singular the claims and demands of the said complainants against him the said John A. Moore up to the date of the said indenture and include the demand and claim of the said complainants against him the said John A. Moore for the whole consideration and lia-bility incurred by the said John A. Moore on the agreement hereinbefore mentioned, and on account of which the said two notes, drawn and endorsed by this defendant, were ne-gotiated to the said complainants and that, at the time of the execution of the said indenture, the said John A. Moore was indebted to the said complainants in the whole of the debt for which the two promissory notes aforesaid were negotia-ted to the said complainants or so much thereof as remained unpaid to the said complainants and that such debt or so much thereof as remained unpaid to the said complainants was included in the judgments against him aforesaid and agreed to be compromised in and by the said indenture; and that such debt was, at the time of the contraction thereof, se-cured by various bonds, notes and other securities of the said John A. Moore. And this defendant further saith that, as he is informed and verily believes to be true and as ap-pears by a receipt endorsed on the counterpart of the said indenture shown to him, the said John A. Moore, after the execution of the said indenture and on the nineteenth day of June 1839, paid to the said complainants the sum of five thousand dollars on account and in part payment of the said sum of thirty thousand dollars, stipulated to be paid in and by the said indenture. And this defendant further saith, that the said indenture was made and executed and time thereby given to the said John A. Moore without the consent, privity, procurement or knowledge of him the defendant and

that he, the said John A. Moore, is still alive. All which matters and things this defendant doth aver to be true and pleads the same to the whole of the said bill of complaint, &c.

Mr. *H. S. Dodge*, in support of the plea.

The plea of the defendant Hitchcock is well pleaded and a valid bar to the whole of the complainants' bill.

1. It sets up one single matter of defence to both judgments, viz. that the defendant Hitchcock was the surety without consideration of John A. Moore and known to the complainants so to be as well at the time of the making of the notes as before and at the time of the act complained of; and that the complainants, without his privity or consent, by a valid deed, for a valuable consideration, altered the whole contract with the principal debtor and gave him time for four years. The defendant is thereby discharged : *Gahn* v. *Niemcewicz's Ex'rs.* 11 Wend. 312 ; S. C. 3 Paige, 614.

2. The various allegations in the plea all tend to this single defence and do not, therefore, render it multifarious ; and if any of the allegations are unnecessary, as they do not set up any other or distinct matter of defence, they are mere surplusage which does not vitiate the plea : Story on Equity Pleading. Although the defence might have been well enough pleaded without setting forth so much of the agreement, yet, as the defendant might have pleaded it *in hæc verba* and must give the whole in evidence if issue be taken on the plea, the only objection on that score would be an exception for impertinence.

3. The surety is discharged wherever the contract is altered and wherever, for any moment of time, the creditor, by a valid agreement, has disabled himself from proceeding against the principal. The reason of the rule has nothing to do with the form of the obligation and applies with equal force after as before a judgment at law against the surety : *King* v. *Baldwin*, 2 J. C. R. 560.

4. In certain cases, as where in a joint and several bond both obligors appear to be principals and after judgments against the surety and principal, the surety is estopped *in a court of law* from proving himself to be other than a principal. But, these cases depend entirely upon technical

1843.

DELAPLAINE
v.
HITCHCOCK.

rules of courts of law and never had any application in courts of equity, which latter never suffer any form of security to affect the substantial equities of the parties; and, accordingly, as well in England as in this state and other states, sureties are constantly relieved in equity where time has been given to the principal, after judgments against both principal and surety and no case and no elementary writer on the law has ever doubted those cases or pretended any distinction between cases before or after judgment against the surety : *Eyre* v. *Bartross*, 3 Mad. R. 221 ; *Bank of Ireland* v. *Beresford*, 6 Dow. 233 ; *Rees* v. *Bewington*, 2 Ves. Jr. 543 ; *Law* v. *E. I. Company*, 4 Ves. 824 ; *Nisbet* v. *Smith*, 2 Bro. C. C. 579 ; *Rathbone* v. *Warren*, 10 J. R. 587 ; *King* v. *Baldwin*, 17 J. R. 384 ; *Clark* v. *Niblo*, 6 Wend. 236, and the Chancellor's opinion at p. 244 ; *U. S.* v. *Howell*, 4 Wash. C. C. R. 620 ; *Jones* v. *Bullock*, 3 Bibb, 467 ; 3 Wash. C. C. R. 70 ; *Waters* v. *Creagh's Ex'r.* 4 Stewart & Porter, 410 ; *Wall's Ex'rs.* v. *Gresson's Distributees*, 4 Munf. 110 ; *Tinsley* v. *Oliver's Adm'rs.* 5 Munf. 419 ; *Alcock* v. *Hill*, 4 Leigh, 622 ; *Lusk* v. *Ramsay*, 3 Munf. 417 ; *Fryer* v. *Austill*, 2 Stewart, 119 ; *Perkins* v. *Kershaw*, 1 Hill C. R. 351.

5. There is no decision of any court of equity nor even any dictum on the other side. The case of *Lenox* v. *Prout*, 3 Wheat. and the case of *Bay* v. *Tallmadge*, 5 J. C. R. (which cites or rather miscites the first case,) are, both of them, dicta wholly unnecessary to the decision of the causes which are both decided on the facts against the surety and are opposed to the whole current of authority. But they do not, either of them, apply or pretend to apply to any other case than the case of a surety complaining of negligence or delay in the creditor after the judgment and they are put on the ground that the surety might pay the debt and take an assignment of the judgment against the principal. A reason that fails wholly in a case like the present when the complaint is that the creditor has disabled himself from assigning the judgment. Chancellor Kent's meaning appears very plainly from a comparison of *King* v. *Baldwin*, in 2 J. C. R. 560, (which was reversed in 17 J. R. *ubi supra*)

and *Berg* v. *Radcliff*, 6 J. C. R. at p. 307, with the case of *Bay* v. *Tallmadge*.

Mr. *M. Hoffman*, for the complainants.

THE VICE-CHANCELLOR :—The plea is sufficiently un-objectionable in point of form ; and the several matters set out in the plea all tend to one point, namely, the making of an agreement by which the complainants gave time to the principal debtor, without the consent of the defendant, a surety. And in order to show that it was a valid agreement and available against the complainants, the plea alleges a part performance or agreement in part executed by payment and acceptance of five thousand dollars on account of the stipulated compromise. This allegation does not, in my opinion, render the plea bad for duplicity.

The question, then, arises, whether the plea contains matter in bar of the relief and, of course, of the discovery as incidental to that relief ? In order to test the goodness of this plea, it is necessary to consider in what position the parties stood towards each other at the time of making the agreement and entering into the covenant set up in the plea. Did Hitchcock, then, stand in the light of a mere surety, as when his liability rested upon his endorsement of the notes or had he become a principal debtor and lost the character of surety or of being a mere accommodation endorser by suffering the demands to pass into judgments against him? The complainants contend that the original liability having merged in the judgments, the relation of principal and surety thereby ceased and the complainants were no longer bound to regard him as a surety, but were entitled to treat him as a principal debtor. It is very true, that the recovery of a judgment against the endorser of a note or bill or against bail has the effect of converting a suretyship into an absolute indebtedness and to make him, who was only contingently liable before, now actually a debtor, so that the creditor party may proceed, at once, to compel payment from him, without waiting to exhaust his remedy against the person or property of the one who was principally liable for the same debt or demand. If he has

judgment at the same time against the one who was origi-
nally the principal debtor and has the power to pursue him
with an execution, still, the court of law will not, nor will
this court, as a matter of equity, compel him to that course,
but will leave him to enforce payment from that quarter
where he can obtain it most easily and speedily. This is
about the extent and meaning of the cases of *Lenox* v.
*Prout*, 3 Wheat. R. 520; *Findlay's Executors* v. *Bank of
the United States*, 2 M'Lean's Rep. 44; *Bay* v. *Tallmadge*,
5 J. C. R. 305; and of other cases cited on the argument.

All that the courts can do in such cases is to help the
man who, thus, has been compelled to pay the debt of a
third person, to all the rights and remedies and to the bene-
fit of all the securities which the creditor may happen to
hold or be possessed of or be entitled to against such third
person. This is done on the principle of substitution or
subrogation. The party paying the debt is entitled to take
the place of the original creditor, to have an assignment of
any judgment and execution against the primary debtor and
a transfer of any collateral securities the creditor may hold.
All this he is entitled to when he pays the debt. No mat-
ter whether before or after a judgment against him. His
character of surety is not to be lost sight of from the mere
fact that his liability has undergone a change and become
merged in a judgment. I am entirely at a loss to perceive
how that circumstance can make any difference in regard
to this equitable doctrine of substitution. No case has or
can be produced where it has been decided that he has lost
the right to be regarded and treated as a surety because he
happens not to pay the debt until after a judgment has been
recovered against him. Whenever he does pay, either vol-
untarily or by compulsion, he becomes the creditor and is en-
titled, of course, to sue at once for his reimbursement. This
is a right which cannot be denied or withheld from him.
And it is equally clear that, superadded to this right of ac-
tion, is that of subrogation as between him and the original
creditor. Under these circumstances, the original creditor
can do no act, in the meantime, without his consent, which
should have the effect of suspending his right of action or

of lessening his chance of reimbursement, except at the peril of discharging him from all liability.

Now, what have the complainants done in this case? According to the plea, they entered into an agreement with John A. Moore, the principal debtor, to accept a compromise of thirty thousand dollars in full of all his indebtedness to them, including the amount of the judgments against Hitchcock as the mere surety or accommodation endorser of Moore's note, giving time to the extent of upwards of four years within which to make the payments and covenanting not to sue or take any legal measures or proceedings whatever during that time. This was a valid and binding covenant of which Moore could, at any time, have availed himself. It was entered into without Hitchcock's knowledge or consent. The effect of the agreement and covenant was, at least, to suspend all right of action against Moore, the principal debtor, from the nineteenth day of June one thousand eight hundred and thirty-nine to the first day of October one thousand eight hundred and forty-three ; so that, if Hitchcock had been disposed and had wished, during that period of time, to have cleared himself by paying off the judgments against him, he could have had no remedy over against Moore, except in violation of the complainants covenant. They had no right to place such an obstacle or impediment in the way of his choice to have the matter brought to a speedy close and thus to postpone his right of substitution and subrogation for that period or for any length of time without his consent. Perhaps Hitchcock may not have been injured by this delay or forbearance ; still, that is not the question. The point is, have not the complainants done an act calculated to injure him or to increase his risk and to vary the terms and obligations of his contract? Chief Justice Savage has stated the true principle, as collected from various cases, in *Brown* v. *Williams*, 4 Wend. 360. " If the creditor," he observes, " by agreement with the principal debtor, without the surety's consent, has disabled himself from suing when he would otherwise be entitled to sue under the original contract or has deprived the surety, on his paying the debt, from having an immediate

recourse to his principal, the contract is varied to his preju-
dice and he is, consequently, discharged."

I cannot but think that this principle applies, in all its
force, to the present case. I must allow the plea.