Gridley, J.
One of the most important questions involved in this controversy, is whether the deed to Mrs. Ely, of October, 1823, was valid, and actually conveyed the farm to her; and if it did not, whether the grantor, David Judson, and the plaintiff, who represents him, are not estopped from denying that it did.
I. Did the deed executed to Mrs. Ely actually convey to her the title to the premises in question 1 (1.) It is said by the counsel for the plaintiff, that by the terms of the deed and the legal construction thereof, the grantor did not profess to convey any thing but his right and title ; which, in fact, was no title *618 whatever, inasmuch as he had already conveyed it to David Ely, by the deed executed in 1819. The deed in question, by its terms, conveyed to Mrs. Ely, her heirs and assigns, “ all the two certain tracts, pieces or parcels of land lying in township number 3, in the 7th range of townships in Phelps and Gorham’s purchase, and known as the town of Brighton, in the county of Monroe, and state of New-York, being lots numbers 32 and 40 of the second division, to contain, as by the original survey, 210 acres each, amounting to 420 acres, more or less ; together with all and singular, the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. And all the estate, right, title, interest, and claim and demand whatever of the said party of the first part, éither in law or equity, of, in and to the above bargained premises, with the said hereditaments and appurtenances. To have and to hold the said lots or parcels of land, to the said party of the second part, her heirs and assigns.” The grantor, then, for himself, his executors and administrators, covenants to and with the grantee, her heirs and assigns, to warrant and defend the quiet and peaceable possession of the said premises, against the grantor, his heirs, executors and assigns, and all and every other person or persons claiming the said premises, Spc. by, through or under him or them.
To show that by the above description of the premises conveyed, the grantor merely released, or quit-claimed, such title as he might have, the case of Allen v. Holton, (20 Pick. 488,) is referred to. In that case, the grantor conveyed in the following words: “ All my right, title and interest, in and unto the ferry called, <fcc., and the boat, &c., and all the estate, land and buildings standing thereon, as the same is now occupied and improved by me.” And the court held that the deed merely purported to convey such right as the grantor had in the lands, and that the covenants were limited by the grant. And looking to the words of the grant and descriptions alone, it cannot be doubted that such was the intent of the parties to the deed. The intent of the grantor was to convey his right *619 and title to the ferry boat, and to the land and buildings which he occupied and possessed at the time. The case, also, of Moore v Magrath, (Cowper, 9,) holds that where certain specified premises are conveyed by a grant, a sweeping clause of “ all the donor’s other lands in Ireland,” will be rejected as not within the grant. I am also referred to 11 Pick. 296, 13 Id. 468, 7 Id. 169, 2 Barn. & Adol. 278. In my judgment, none of the cases warrant the construction sought to be given to this deed. I think it was clearly the intention of the grantor to convey the two lots described in the conveyance,' and that the clause relied on by the plaintiff’s counsel, was inserted, with no purpose to limit the grant, but for the greater caution, to embrace within it any claim and title, equitable as well as legal, which the grantor might have in the land. The habendum clause is equally explicit in its description of the land itself, as distinguished from the mere contingent interest which the grantor might happen to have in it. The habendum clause may enlarge, abridge, or explain the premises in a deed. (See 12 Wend. 91.) (2.) It is true, that the legal title was in David Ely, by virtue of the deed of 1819 ; and he could not be divested of it, unless Mrs. Ely was a bona fide purchaser without notice. The cases reported in 2 John. 84, 9 Id. 55, 4 Wend. 474, Id. 585, show that the cancellation or re-delivery of a deed, with the view of reinvesting the grantor with the title, will not have that effect. But" it was competent for the grantor, by the agreement and consent of David Ely, to convey the same land to a third person, for a valuable consideration; and David Ely, consenting to, and aiding in, such new conveyance, would be estopped, in equity, from setting up his prior legal title, against the defective title of the second grantee. (Storrs v. Bliss, 6 John. Ch, Rep. 166.) Now, in this case, the fair presumption is, that it was agreed between David Ely and David Judson, that Ely would consent that the two lots in question should be deemed to be restored to Judson, and that the same should be conveyed to Mrs. Ely. The consideration or inducement to this, we do not know. It is not improbable, however, that the lands conveyed to Judson, as the condition of the conveyance *620 by him to Ely, were the lands of Mrs. Ely. The consideration mentioned in the deed to David Ely, is an exchange of lands, and that stated in the deed to Mrs. Ely, is described as “ an exchange of lands lying in Huron county, Ohio, being part of the patrimonial estate of the said Priscilla, and one hundred dollars.” The consent of David Ely to this conveyance to his wife, and his active agency in effecting it, appear from the fact that the deed is in his hand-writing. And it is quite probable that the deed of 1819, would have been re-delivered or destroyed, had it not embraced, also, other lands than the lots 34 and 40. I perceive no reason why David Ely should be allowed to invalidate a deed made to his wife, when he would be precluded from doing it as against strangers. It is a well established principle, that a married woman is regarded as a feme sole when her separate property is concerned; and she may go into the court of chancery for the protection of her rights, in relation to her separate estate, against her husband, as well as against a stranger. (17 John. 548.) And I have already said that equity would interfere to prevent David Ely from asserting his own legal title, against a third person who had been induced by him to part with his money, for the estate of which he was seeking to deprive him. (Storrs v. Barker, 6 John. Ch. Rep. 166, and cases there cited.)
I see no reason, therefore, why a court of equity should not protect the title of Mrs, Ely, in her heirs, -against her husband and those claiming under him, if, in truth, her property formed the consideration of the conveyance to her; even if she had notice of her husband’s prior deed. But (3.) I am inclined to regard Mrs. Ely as a bona fide purchaser, without notice.
First. There is no proof of notice to her. (1.) There is not the slightest evidence of actual notice to her, of the prior deed to David Ely. (2.) The plaintiff’s counsel claims to have shown David Ely to have been in the possession and occupation of these premises, at the date of the deed to Mrs. Ely; thus charging her with constructive notice of whatever title he possessed. The witnesses relied on as proving this fact, are Lewis Frick and Culver. I have critically examined the testi *621 mony of these witnesses, and it falls short of establishing the fact thát David Ely lived upon or occupied the land in question. In fact, the deed to Mrs. Ely describes both grantor and grantee as residents of Fairfield in Connecticut, at the time.
Secondly. As to the consideration being the patrimonial lands of Mrs. Ely. (1.) It has been solemnly recited by the grantor in the deed; and it is said in Cowen & Hill’s Notes to Phil Ev. 1237, that the general ride is “ that a recital in a deed estops the party executing it and those claiming under him, by title subsequent.” But this relates to the statement of the receipt of a consideration; and it is not to be denied that in an ordinary case of a statement in a deed, of the receipt of a pecuniary consideration, parol evidence may be received to contradict the statement in the deed. This may be done in a suit for the purchase money, (Cowen & Hill’s Notes, 217,1441;) and also on a question of damages upon a covenant in the deed; and on a question as to who received the money; and perhaps, in some other cases. (Cowen & Hill’s Notes, 216,218, 217, 1441, 1442.) But, as between parties and privies, (there being no fraud charged,) “ it is not allowable to inquire into the consideration, for the purpose of showing an interest different from, or additional to, the interest expressed in the operative words of the conveyance, or to defeat the deed, or to change its legal effect, in the creation or modification of the estate.” (See 2 Cowen & Hill’s Notes, 1444, and cases there cited.) (a) It is said, also, that when a note expresses a specific consideration, it is not competent to prove one inconsistent with the one expressed. (See Idem, 1460, and cases there cited.) So, it has been held that a party is estopped, by the recital of a fact, which must have been within his own knowledge. (See cases cited in Cowen tip Hill’s Notes, 1237.) In this case the recital is of a specific consideration moving from a particular person; and it is stated to be of such a nature and description that if it be *622 true, certain important rights would be created in favor of the grantee, which the deed would not otherwise secure to her, in the event that the title under the deed should be drawn in question by a creditor of David Ely. I am, therefore, strongly inclined to think that the grantor should not be allowed to contradict this fact thus deliberately admitted, and obviously with the view of conveying to the grantee all the advantages arising to her from the fact of the consideration moving directly from her. But, whether the recital in question be held to estop the grantor, as to the fact recited, or not, it is quite certain that the evidence to controvert it, should be of such a character as clearly to disprove it. Now, I do not propose to go into an analysis of the testimony produced, as to the amount and disposition of the lands of Mrs. Ely in Ohio. If she and her husband had conveyed these lands under an agreement that the proceeds should be thereafter applied for his benefit, then, though the lands which were received by David Judson in exchange, were conveyed by David Ely, the fact recited might, nevertheless, be substantially true. This hypothesis is corroborated by proof of a portion of the lands being conveyed to the husband. It will be remembered that the deed to David Ely expresses the consideration to be an exchange of lands. It is, therefore, not improbable that the lands conveyed by David Ely were the very lands which were derived from the patrimonial estate of his wife, or, that such lands were purchased with the proceeds of ■ such estate. There can be no other - reasonable explanation given of the conveyance to Mrs. Ely, of the lands in question. The case might be open to the suspicion that the conveyance was made to defraud creditors; but no such ground is assumed in the bill, nor is there any evidence to show that David Ely was, at the time, embarrassed; or that he owed a dollar to any person, except to the grantor; who would not be likely to be a party to a conspiracy to defraud himself. On the contrary, it is inferrible, from the evidence, that David Ely was, at the time, a man of very considerable property. I am, therefore,- of the opinion, that the complainant has not disproved the admission in the deed that the actual advance of the patrimonial *623 estate of Mrs. Ely furnished, directly or indirectly, the consideration for the conveyance. (4.) But Smith purchased the premises and agreed to pay for them, on the assumption that the deed of 1823 conveyed a good title to Mrs. Ely. It is, therefore, proper to inquire what notice he had, that such was the legal effect of that deed. He found a prior deed, it is true, but he found the latter one on record and the other not; nor had he any evidence that Mrs. Ely had notice of the prior deed, when she took the conveyance in question ; much less any such notice as is required to break in upon the registry acts. He, moreover, had the assurance of the grantor David Judson, under his hand and seal, that Mrs. Ely advanced the consideration out of her own property, and that David Ely was consenting to ■ the sale to his wife, by the fact that the deed was in his own hand-writing. If, then, Smith purchased, relying on the truth of this recital, as to the consideration, the grantor would be estopped from denying it, upon the well settled principle relating to an estoppel in pais. (Cowen & Hill’s Notes, 200 et seq. Idem, 1237.)
II. I come now to the other branch of the question proposed to be considered; which is, whether the plaintiff is not estopped » from alleging that the deed to Mrs. Ely conveyed no title.
(1.) In my judgment the grantor is estopped. He conveyed, as I have already said, the premises in question, to her, and not merely his right and title to them. By this, I mean, that he professed to convey the premises, and that the deed described the premises, with apt words to pass the title in them to the grantee, and he acknowledged a consideration moving from her. In addition to this, he covenanted to warrant the premises against all persons claiming under, by, or through himself, and against his own acts. Now, can he set up a title as against her, derived under the prior deed to David Ely 7 Could he have purchased the premises and taken a deed from David Ely and then brought ejectment against Mrs. Ely' or against her heirs, after her death ? He, doubtless, might purchase the life estate of David Ely, but could he purchase the estate of inheritance and enforce it against her children or their grantees 1 *624 Can he do this in the face of his warranty against this very deed under which the claim is made ? If he can, then I have misunderstood the doctrine of estoppel. It is said that this warranty against his own acts and the acts of those claiming under him, would not prevent him from acquiring an independent title, subsequently, and enforcing the same against his grantee, (13 Pick. 116;) and that such newly-acquired title would enure to David Ely, by virtue of another well settled rule. (14 John. 194.) To this there are two answers. 1. It does not appear that any such newly-acquired title was the true one; and 2. The estoppel is against the right of setting up the prior deed in hostility to Mrs. Ely’s, when that prior deed is all the evidence produced of a superior antagonist title to hers. Much refined and ingenious reasoning has been employed to resist the application of the principle of estoppel to this case; but, it seems to me, that the doctrine is directly applicable to it; and that it would be in violation of the plainest principles of the theory of estoppel, to allow the grantor to defeat the title he . professed to convey to Mrs. Ely, by and under the paramount title of David Ely, created by his own prior deed, against which • h.e executed to her, her heirs and assigns, a covenant of warranty.
(2.) I am also of the opinion that if the grantor is estopped, the plaintiff, his administrator with the will annexed, is also estopped. Indeed, the case of Osborne v. Moss, (7 John. 161,) is an express authority for this position. It is supposed, however, by the plaintiff’s counsel, that the case of Babcock v. Booth, (2 Hill, 181,) has established a different rule. In that case, the administrator was permitted to recover against a fraudulent purchaser, for the conversion of a yoke of oxen, of which the intestate died possessed, in a case where the whole assets of the intestate, including the oxen, were insufficient to pay his debts. This decision was placed upon the ground that the sale was void as to creditors, and that formerly a creditor had a remedy against a purchaser taking the property of the deceased, under such circumstances, by charging him as executor de son tort; and that the revised statutes have abolished this remedy, and *625 given, instead thereof, the proper action to the executor or administrator of the deceased. It will be seen, therefore, that the case at bar differs, in many essential particulars, from the case of Babcock v. Booth. There is wanting, here, the indispensable requisite of proof that there is a deficiency of assets to pay creditors. There is no evidence that David Judson left any creditors, and there is evidence that shortly before his death he received several thousand dollars from David Ely. Again; the subject matter of the alleged fraudulent sale, is real estate, to which the doctrine of the revised statutes (2 R. S. 449, § 17,) has no application. The creditors of David Judson deceased, if there be any, are left to take such remedies, to avoid the sale in question, as the law has provided for them. The plaintiff not falling within the exception, is subject to the general rule; which this same case of Babcock v. Booth, (2 Hill, 183,) declares to be, “ that an executor of administrator can only maintain such claim as the testator or intestate might have successfully adopted while living.” Indeed, so strenuously do the courts adhere to this rule, that an assignee for the very purpose of paying creditors, and who, therefore, represents the creditors more perfectly than any administrator can do, can assert no right to property conveyed by the assignor in fraud of creditors, which the assignor himself would be estopped from asserting. This point is expressly decided in Brownell v. Curtis, (10 Paige, 218.)
For these reasons, it must be assumed, as between the parties to this suit, that when Smith purchased the farm in question it was owned by the children and heirs of Mrs. Ely, subject to the life estate of David Ely, as tenant by the curtesy. It matters not to the plaintiff, that these heirs consented that the creditors of David Ely should receive a larger portion of the purchase price, than his right, as tenant by the curtesy, would entitle him to receive. Nor can he complain that David Ely’s portion of the purchase money was paid to other creditors than himself; for the election to prefer one creditor to another, is the right of the debtor. It is argued, however, that the farm was purchased for a sum faf below its value, and that the purchase *626 was, for that reason, fraudulent; and that at all events, Smith should account for the excess. If I am right in the conclusion' to which I have arrived, as to the interest of the heirs of Mrs. Ely in the farm, it will follow that this remark can apply only to the interest of David Ely in the premises. And I think that it will not be denied that the creditors of David Ely have received more than his life estate was worth, even if the land were- appraised at $50 per acre. But, upon an examination of the conflicting testimony on the question of value, 1 cannot say that the farm was sold too low. It would be manifestly wrong to estimate the whole farm of 420 acres, at the price per acre, that would be paid for a comparatively small and more valuable part. I dismiss this part of the case, by a reference to the views of the chancellor, expressed upon a case somewhat similar, in Grant v. Holmes, (8 Paige, 259.)
The only remaining question respects the right of the plaintiff to reach, by this bill, the unpaid part of the note held by the deceased daughter of Mr. Ely, at the time of her death. If there had been no provision in the contract, respecting this fund, and she had, herself, made no disposition of it, it would have gone to her administrator, to be applied, first, to pay any debt she might have owed at her decease, and the residue would have been paid to her father,, under the statute of distributions. But the agreement for the sale of the farm, controlled the disposition of this fund. When she sold her interest in the land in question, to the defendant Smith, she had a right to provide that the whole consideration, or any part of it, should be paid to her brothers and sisters, or that it might be so paid, on the happening of any contingency, as, of her marriage, or death. She had a perfect right, also, to dispose of this fund, by will, to her sisters : and it would not be a case where fraud against the creditors of David Ely could be predicated of the transaction, even if it were conceded that the object was to place it where his creditors could not reach it; It is every day’s practice for a father so to dispose of his property by will, that the creditors of an insolvent or profligate child cannot reach it. So, in this case, Miss Ely could have disposed of this fund by *627 will, (had there been no previous disposition of it,) and I think that she might agree that any part of the fund, not paid at her death, should be paid to her sisters. The fund never passed to her father, and therefore, his creditor has no more right to it than if the deceased owner of the note, had, on her death-bed, delivered the note in question, as a gift, to the persons who will now enjoy it, under the original agreement of the parties.
No claim was made, on the argument, nor can there be successfully, to reach the small amount of property given, years ago, by David Ely to one of his sons and the plaintiff not having discovered any property or equitable rights of the judgment debtor, which can be reached by this bill, it must be dismissed ; but as the plaintiff is an administrator, and had some probable ground to file the bill, so far as respects the proceeds of the farm, it is dismissed without costs. (1 Paige, 472.)

 As between the parties to a conveyance, where a mere nominal consideration is expressed in such conveyance for the purpose of supporting it, a court ought not to allow proof to be given of the' non-payment of any consideration, in order to destroy the deed. (Mariam v. Harsen, 2 Barb. Ch. Rep. 232.)