DWIGHT *vs.* PEART.

The plaintiff in an action of ejectment will not be estopped from asserting his legal title, by the circumstance that, before such title was acquired, he executed to the defendant's remote grantor an agreement of indemnity against any damage he might sustain by reason of the covenants of warranty in a deed of the premises given by such remote grantor, under which deed the defendant entered and claimed. T. R. STRONG, J., dissented.

THIS was an appeal from an order made at a special term, overruling the demurrer of the plaintiff to the third answer of the defendant. The action was for the recovery of the possession of real property; the plaintiff claiming to own the same in fee. The plaintiff, in his complaint, stated his title to have been derived from Everard Peck, to whom the premises had been conveyed in trust by Maltby Strong. That Peck conveyed to the plaintiff on the 22d of November, 1853. The answer set up that after the giving of the deed by Strong to Peck, Strong conveyed the premises in question to Stephen Charles, and Charles conveyed to William W. Alcott, who conveyed with warranty to Frost & Wilbur. That the defendant claims title under Frost & Wilbur, through several mesne conveyances. The answer then stated, that in 1853 an action was pending in the supreme court, wherein Everard Peck was plaintiff, and Maltby Strong, Theodore W. Dwight, (the plaintiff in this action,) and William W. Alcott, were defendants; in which action the title to the property in the complaint mentioned, with other real estate, was in question, and the title of Peck thereto controverted by Alcott. That that action was settled between the parties thereto, upon which settlement the plaintiffs executed to Alcott an instrument, by which they covenanted and agreed that the said Theodore W. Dwight should and would well and truly indemnify and save harmless the said William W. Alcott, his heirs, executors, administrators and assigns, from all loss or injury, costs and damages, which to him or them might arise by reason of a failure of certain covenants of warranty contained in a deed executed by said W. W. Alcott to Joseph A. Frost and Clark Wilbur, dated April 11, 1846, and

in a certain other deed executed by said Wm. W. Alcott to Jacob Anderson, dated December 14, 1849. And that the said Theodore W. Dwight should and would save, defend, keep harmless and indemnify the said William W. Alcott, his executors, administrators and assigns, from and against all actions, costs, damages, claims and demands whatever, to be incurred or sustained by the said Alcott, his executors, administrators or assigns, for or by reason of or on account of the non-performance of the covenants contained in said deeds by him executed, or either of them.

The defendant then insisted that the plaintiff was estopped, by his covenant contained in this agreement, from denying the defendant's title under the conveyances mentioned in the answer; and he prayed that the plaintiff might be perpetually enjoined from the prosecution of this or any other action to recover the possession of the premises. The plaintiff demurred to the latter part of this answer.

*S. Mathews*, for the appellants.

*J. H. Martindale*, for the respondent.

E. DARWIN SMITH, J. The plaintiff claims to be the owner in fee simple of the premises for which he has brought his ejectment. The defendant is confessedly in possession without title, having gone into possession under a claim of title which we are to assume is spurious, derived through several mense conveyances from Wm. W. Alcott, who conveyed with warranty. The defendant now, in his answer, to which the plaintiff has demurred, and upon which we are called to pass, without setting up any title in himself, claims that the plaintiff is estopped from asserting his legal title, because, before such title was acquired, he executed to Alcott, the defendant's remote grantor, an agreement of indemnity against any damage he might sustain by reason of the covenants of warranty in his deed of the premises under which the defendant entered and claimed. The point presented in the answer is simply whether

Dwight *v.* Peart.

the execution of such instrument of indemnity is a good estoppel in behalf of the defendant; and this is the only question presented on this demurrer. That it is not such an estoppel, seems to me very clear, upon authority.

An estoppel by *deed* can only be set up by the parties and privies. (*Coke Litt.* 352. 3 *John. Cases,* 101. 17 *Mass. Rep.* 432. 2 *N. Hamp. Rep.* 67. 9 *Wend.* 209. 4 *Denio,* 482.) There is no privity of estate or contract between the plaintiff and the defendant; and nothing in the case upon which to base an *estoppel in pais.* (8 *Wend.* 480. 3 *Hill,* 215.) An express warranty of title, but nothing short of that, will estop a grantor from setting up title against his own grantee. (1 *Shep.* 216, 281. 24 *Pick.* 324. 1 *Barb.* 623.) The plaintiff has never granted the premises to the defendant, or any grantor of his, and therefore this rule of law will not help out his claim of an estoppel. The plaintiff's contract is merely personal and executory, and does not relate to the land, and is only available to Alcott after a breach. (15 *Mass. Rep.* 106.) The answer clearly sets up no matter of estoppel by deed or *in pais,* and the demurrer to it in that respect is well taken. But aside from questions of estoppel in deed, or *in pais,* my brother STRONG has sustained this answer, or held at special term that it sets up a defense "upon the principle of estoppel to prevent circuity of action." And he refers to *Brown* v. *Williams,* (4 *Wend.* 360;) *Clark* v. *Bush,* (3 *Cowen,* 151;) *Jackson* v. *Root,* (18 *John.* 60.) The first of these cases was an action of assumpsit by a second indorser, to recover back money paid under a judgment against such indorser where the holder had received payment from a prior indorser, and covenanted not to sue him, and to indemnify him against any suit on the note. The court held that each indorser stood in the light of a principal debtor to the subsequent indorsers, and that payment by, or a release of, a prior indorser was a discharge of the debt, and necessarily released the subsequent indorsers as sureties. The court also held that a covenant not to sue an individual debtor who is solely liable, has the effect of a *release,* and that it might be pleaded in bar, to avoid circuity of action, as is

well settled law. (2 *Salk.* 575. 2 *Bos. & Pul.* 62.) The case in 3 *Cowen*, 151, was the case of a bond to indemnify a single debtor against the payment of a note signed by him, &c.; *held* that the indemnity operated as a *release*, to avoid circuity of action. The case in 18 *John.* was where a grantor in a deed of conveyance was *released* by his grantee to make him a witness, and the court held that the release discharged also subsequent grantors of the same premises under the same title. All these cases are cases of release to avoid circuity of action, and they fairly illustrate all that class of cases where the court gives *present effect* to covenants and agreements as a defense, to avoid circuity of action and prevent a multiplicity of suits. But it seems to me they have no analogy to the present case. This action is brought to recover specific real estate; it is a proceeding *in rem*, and to recover damages for the unlawful withholding of the same. The recovery by the defendant of Alcott, or of any other intermediate grantor, upon their respective covenants of warranty, would be a mere recovery of damages. Such recovery of Alcott would be limited to the consideration paid him on the conveyance by him, with six years' interest and costs. When an agreement not to sue a bond of indemnity against a surety has been held to operate as a release, to avoid circuity of action, it has been because the defendant in the first suit, after payment, could commence a suit and recover back the identical amount paid. And this is the whole of the principle. Here nothing of the kind could happen. The defendant has and can have no action against the plaintiff on his bond of indemnity to Alcott. Alcott himself could not sue on it until a recovery had been had against him on his covenant of warranty, and satisfaction obtained upon such recovery.

It may be that Alcott, knowing that he had no title, or at best a doubtful one, sold the premises occupied by the defendant, for a song—for a trifling consideration compared with their actual value. There is no common measure of recovery in the two cases. I should presume from the agreement between the plaintiff and Alcott, that the plaintiff was unwilling to relin-

Dwight *v.* Peart.

quish his claim to the premises in controversy, and that Alcott so understood the agreement, and only asked to be indemnified against personal .loss on his covenant of warranty; for the plaintiff expressly agreed to confirm the title to the Anderson lot in the same connection with the agreement to indemnify said Alcott against loss and injury arising from his covenant of warranty on the sale of the Frost & Wilbur lot, which is the lot for the recovery of which this suit is brought. This bond of· indemnity to Alcott cannot operate as a release of the land to the defendant, or to his grantee, for another reason. The plaintiff then had no title to the land. He acquired his title, as he states in his complaint, more than a month afterwards. A release only operates upon an existing interest, and does not pass a right subsequently acquired. (4 *Mass. Rep.* 688. 4 *Pick.* 365. 7 *Mass. Rep.* 153. 15 *id.* 106.)

A deed of release contains no warranty, and works no estoppel. (7 *Conn. Rep.* 250. 13 *Pick.* 116.) I am unable to see the least defense in the part of the answer covered by this demurrer, and think the decision of the special term should be reversed.

WELLES, J., concurred.

T. R. STRONG, J., dissented.

Judgment reversed.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong*, *Welles* and *Smith*, Justices.]