1829.

Van Horne
v.
Crain.

[*455]

*VAN HORNE v. CRAIN.—CRAIN v. VAN HORNE.

Covenants of warranty and to convey contained in a lease of real estate, run with the land, and are binding upon the heirs and assignees of the lessor.

A subsequent purchase by the lessor of an outstanding claim against the premises will enure to the benefit of the lessee by virtue of the covenant of warranty.

The same result follows where the purchase is made by an assignee of the reversion.

An assignee of an undivided moiety of leasehold premises, can maintain an action in his own name upon a covenant of warranty contained in the original lease.

Whether he could maintain an action upon a covenant to convey without joining with the assignee of the other moiety?   Quære.

But if the assignee of one moiety should unconscientiously refuse to join with his co-tenant in any act which would be for the common benefit of their estate, Chancery will compel him to join, or to permit the co-tenant to do it for his own benefit, if it can be done without injury to the estate.

Separate instruments executed at the same time, and relating to the same subject matter, may be construed together and taken as one instrument.

March 23d.

THIS was a contest relative to a mill site and mill privileges in the town of Danube. The mills are situated on lot

No. 17, and the water which supplies them comes from a spring on lot No. 18 in McNeil's patent. On the 4th of October, 1803, the title to lot No. 18 was in Jacob Conklin. Two-sixths of lot No. 17 belonged to James A. Stewart, one-sixth to Alexander Stewart, one-sixth to William R. Stewart, one-sixth to W. Benson, and the remaining one-sixth to Maria, now the wife of J. P. Decatur, subject to the life estate of her father, Thomas Ten Eyck, as tenant by the curtesy. On the day above mentioned, J. Conklin and wife conveyed to J. A. Stewart, A. Stewart, W. R. Stewart, W. Benson and T. Ten Eyck, in fee, four acres of lot No. 18, including the spring and the stream running therefrom. On the following day, J. A. Stewart and T. Ten Eyck for themselves, and as attorneys for A. Stewart, W. R. Stewart and W. Benson, leased lot No. 17, with the benefits, liberties and *privileges thereto belonging or appertaining, to J. Williamson and J. Williamson, junior, for life, at an annual rent of $100 ; with a covenant on the part of the lessors to convey to the lessees or their assigns, on receiving $15 per acre, at any time during the term. There was also a general covenant for quiet enjoyment of the premises, against the lessors and all other persons. The lease was not signed and sealed by J. A. Stewart and T. Ten Eyck, in the names of those for whom they professed to act as attorneys. By a covenant indorsed on the lease at the same time, and signed and sealed by J. A. Stewart and T. Ten Eyck, reciting that they had purchased the four acres " containing the water course to the within mill seat and lot of land," for £13 10s. they promised to relinquish the four acres to whoever paid the sums mentioned in the lease, on receiving the purchase-money by them paid to Conklin, with lawful interest from the date of the lease. The Williamsons leased two small lots on No. 17, for a fulling mill and a carding machine, the interest in which leases, by divers mesne conveyances, became vested in Crain. Afterwards, on the 6th of April, 1806, the Williamsons conveyed to Richard and Daniel Van Horne the

1829.

Van Horne
v.
Crain.

[*456]

1829.

Van Horne
v.
Crain.

equal undivided half of all their interest and claim in and to lot No. 17, and the four acres in No. 18, under the lease and the agreement indorsed thereon. The remaining half, by divers mesne conveyances, afterwards became vested in Crain. Benson died in 1805, and his interest in the premises passed by his will to A. Stewart. On the death of the latter in 1808, his interest in the premises descended to his son A. J. Stewart, and his daughter Elizabeth, wife of J. K. Hamilton, subject to the dower right of their mother Elizabeth Stewart. T. Ten Eyck died in the same year, and his interest went to Mrs. Decatur. J. A. Stewart died in 1815, and his interest descended to his sons W. J. Stewart and J. J. Stewart. On the 29th of July, 1815, William R. Stewart, A. J. Stewart and J. K. Hamilton and wife, Elizabeth Stewart the widow, J. P. Decatur and wife, and W. J. Stewart and J. J. Stewart, conveyed to Crain lot No. 17, and the four acres of lot No. 18, in fee ; and he gave them a bond to indemnify them and each of them against the claim of the Van Hornes.

[*457]

*In 1824, D. Van Horne and the heirs of R. Van Horne filed their bill against Crain, containing a general prayer for relief, but no specific relief was asked for therein. The defendant put in his answer, and filed a cross bill, setting forth many of the facts which were not mentioned in the original bill, and praying that the rights and interest of the parties in lot No. 17 might be ascertained, and partition made thereof; that an account be taken between the parties as to the rents and profits, &c., and for general relief. The cause was heard upon the pleadings, and a written stipulation of the parties as to the facts.

*J. V. Henry*, for R. Crain:—In this case both parties claim from the same persons. J. A. Stewart and T. Ten Eyck had no authority from the other joint owners to convey the premises in question to the Williamsons. Their lease, therefore, only passed their own interest. Crain has purchased, and is entitled to the entire reversion of the

whole premises, after the determination of the life estate of
the Van Hornes. The covenants of warranty, and to con-
vey, contained in the lease and agreement to the William-
sons, are indivisible. The Van Hornes having purchased
only an undivided moiety of the premises from the Wil-
liamsons, have therefore no rights under those covenants.
The court cannot modify these covenants, and convert them,
being covenants for the whole, into covenants for parcels.
Crain was not bound to unite with the Van Hornes in the
purchase of the fee under the original lease and agreement.
No action at law could be sustained on this agreement, and
therefore this court cannot decree a specific performance.
(*Palmer* v. *Edwards*, Dougl. 187, n. 59; 1 Saund. 287, and
note; *Dumper's case*, 4 Coke, 119, 120; 3 Com. Dig. 128,
Cond. O. 2; *Spencer's case*, 5 Coke, 16; Bridgman's Index,
tit. *Agreement*, 38; 2 Freem. 216, 217. id. 246.) This
court has no power to vary the contract; (*King* v. *Wight-
man*, 1 Anst. 80; *Jordan* v. *Sawkins*, 4 Bro. Ch. Cas. 477;)
nor to decree a specific performance of the contract when
varied. (*Earl of Worrington* v. *Langham*, Pre. in Chan. 89;
*Champernoon* v. *Gubbs*, id. 126.) Crain being entitled to a
*life estate in seven-twelfths, and to the entire reversion of
the whole of the premises in question, is entitled to a decree
for a partition of the estate. Crain, in his purchase of the
reversion, was not guilty of any fraud upon the Van Hornes.

*J. Platt*, for Van Hornes:—Although J. A. Stewart and
T. Ten Eyck signed the conveyance to the Williamsons
simply in their own names, and not in the names of the
other joint owners; yet this is only a technical legal objec-
tion, and equity will intend that done which should clearly
have been done. In 1814, Crain agreed to purchase from
the Van Hornes their moiety of the premises. But he af-
terwards refused to execute the agreement, and purchased
the whole of the reversion. He therefore possessed full
knowledge of the title and claim of the Van Hornes under
the original lease and agreement. The Van Hornes had

1829.

Van Horne
v.
Crain.

[*458]

made extensive improvements upon the property; and the purchase by Crain of the reversion and the taking advantage of the mistake in the signature of the original lease was a fraud upon the Van Hornes. But if the lease and agreement to the Williamsons were defectively executed, the defect was obviated by the subsequent ratification of the owners, who did not sign those instruments. The Van Hornes possessing equitable rights, have a remedy in Chancery; and Crain having purchased with notice of their rights, has become a trustee for them. A parol authority to the persons who executed the original lease from the other joint owners, was sufficient, if clearly proved. (*Wilkie* v. *Holmes*, 1 Schoal & Lef. 60, note.) Equity will support defective conveyances, made for a valuable or meritorious consideration. (*Minturn* v. *Seymour*, 4 John Ch. R. 497; *Thompson* v. *Atfield*, 1 Ver. 40; *Longdale* v. *Longdale*, id. 456.) If Crain be considered a trustee, there can be no difficulty in decreeing a conveyance of the fee according to the terms of the original lease and agreement.

THE CHANCELLOR:—The lease to Williamsons, and the agreement indorsed thereon, being executed at the same time, and in relation to the same subject matter, may be construed together and taken as one instrument.[1]   *Jackson* v. \**Dunsbagh*, 1 John. Ca. 91.)   Such was undoubtedly the intention of the parties, and this court ought to carry that intention into effect. The execution of the lease and agreement probably was defective. By some inadvertence I have not been furnished with the original instrument, or copies thereof. But I understand from the pleadings, that the lease, in its commencement, purported to be made between J. A. Stewart and T. Ten Eyck, for themselves, and as attorneys for A. Stewart, W. R. Stewart and W. Benson, of the first part, and the Williamsons of the second part;

[*459]

[1] See 2 Cow. & Hill's Notes to Phil. Ev. note 265, p. 518; and authorities there cited

and that it was signed and sealed J. A. Stewart and T. Ten
Eyck in their own names only, without any thing on the
face of the instrument to show an intention to sign and
seal it as attorneys for the other persons named. (9 Coke,
76 b; *Bogart* v. *De Bussy*, 6 John Rep. 94.) Ten Eyck had
only a life estate as tenant by the curtesy, in one-sixth of
lot No. 17, and the lease does not profess to convey the
interest of his daughter, who probably was under age at
the time.

But in the view I have taken of this subject, the rights
of the parties do not depend upon the extent of the interest
which was actually acquired by the Williamsons under the
lease of October, 1803. It was a valid lease of all the in-
terest which J. A. Stewart and T. Ten Eyck then had in
the premises. The lease contains a general covenant of
warranty against the lawful claims of all persons. This
covenant and the covenant to convey run with their inter-
est in the land, and are binding on their heirs and as-
signs.[1] If the assignees of the Williamsons could main-
tain an action on either of these covenants, against J. A.
Stewart and T. Ten Eyck, they would have the same rem-
edy against Crain as the assignee of the reversion of two-
sixths of lot No. 17, and two-fifths of the four acre lot. If
Stewart and Ten Eyck had purchased in the outstanding
claim of the other persons, it would have enured to the
benefit of their lessees by virtue of the covenant of war-
ranty in the lease. (*Jackson* v. *Stevens*, 13 John. Rep. 316;
*Jackson* v. *Hubble*, 1 Cowen's Rep. 613.) And the same
effect must be produced when it is purchased in by the as-
signee of the reversion, who is bound by the covenants
*contained in the lease. (Per Holt, C. J., 6 Mod. Rep. 258,
and Kent, J., 1 John. Ca. 91.)

An assignee of an undivided moiety of the leasehold

[1] In *Norman* v. *Wells*, 17 Wen. 136, Mr. Justice Cowen discusses at
large the doctrine of inherent covenants, running with the land, and of an
assignable character in contra-distinction to those which are purely personal.
See also 4 Kent. 97, 100.

1829.

Van Horne
v.
Crain.

[*460]

premises, from the Williamsons, could maintain an action on the covenant of warranty contained in the lease; but it is at least doubful whether he could maintain an action on the covenant to convey, without joining with the assignee of the other moiety. The covenant of warranty relates to every part and portion of the premises, but the covenant to convey relates only to the whole. If the assignee of one moiety unconscientiously refuses to join with his co-tenant in doing any act which is for the benefit of the estate of both, a court of equity will compel him to join, or permit the co-tenant to do it for his own benefit, provided it can be done without injury to either. Such being the equity of the Van Hornes, as the assignees of a moiety of the premises under the lease and agreement, Crain could not defeat it by the purchase of the reversion.

He must, therefore, elect to convey to them a moiety of he premises, subject to the sub-leases of the fulling mill and carding machine lots, on receiving one-half of the purchase-money specified in the lease and agreement; or to convey the whole, subject to those sub-leases, they paying or securing the payment of the purchase-money in the manner mentioned in the lease and agreement. And there must be a reference to a master to state an account between the parties, of the rents and profits of the premises received by, or chargeable to them respectively; and of all sums paid by, or due to either for rent or repairs, or for other expenditures for the benefit of the leasehold estate. If Crain elects to convey a moiety of the premises only, the master must also examine and report whether the premises are so situated that a partition thereof cannot be made without great prejudice to the owners thereof; and with liberty to make a separate report on that subject. And all questions of costs and other questions and directions must be reserved.