## COUTANT & HOBBY *vs.* SERVOSS and others.

Where a deed conveyed lands to the grantee, in fee, in trust for the benefit of others, and conferred upon the grantee power to grant, bargain, sell, and convey the same, and to make and execute the necessary conveyances for the benefit of the *cestuis que trust; Held* that these terms did not, of themselves, confer a power to execute a mortgage.

As a general rule, a power to sell, if general and unqualified, does not include a power to mortgage.

But if a *mortgage is given under a general power to sell,* as a part of the same transaction with the conveyance creating the power to sell, and for the purpose of securing the payment of the purchase money, it is valid.

And this although such *mortgage covers land conveyed to the mortgagor* by separate deeds, in trust for different *cestuis que trust,* respectively.

Where, upon the sale and purchase of land, a deed is executed therefor, and the purchaser gives back a mortgage for the purchase money, or for a part thereof, the presumption is that the deed and mortgage were executed at the same time, and the whole is considered one transaction. And taking the whole together, the vendee acquires *only the equity of redemption.*

In such a case the purchaser cannot avoid one part of the transaction and affirm the other. He cannot, nor can any one for him, take the land and repudiate the mortgage. He either *holds the land subject to the mortgage,* or he does not hold it at all.

A release of a part of mortgaged premises, from the lien of the mortgage, does not in any manner affect the lien thereof upon the residue, as between the original parties. So far as it relates to them, every part of the mortgaged premises is bound for the payment of the whole debt.

IN EQUITY. This was an appeal from a decree of the late assistant vice chancellor of the first circuit. On or about the first day of July, 1836, John Pintard, of the city of New-York, purchased for the sum of $1380, of one Charles Smith, 48 lots of ground in the village of Jamaica, and took from said Smith and his wife a conveyance to himself in trust for his two infant grandsons, John Pintard Servoss and Elias Boudinot Servoss, with power to the grantee to grant, bargain, sell and convey those lots, or any part thereof, for such sum or sums, and at such times as to him should seem proper, and to make and execute all necessary conveyances in the law for the same, for

the benefit of said infants. Thomas L. Servoss, the father of
the said John and Elias, furnished the largest part of what
consideration money was paid down; the remainder being taken
from money belonging to the infants, on deposit in the Savings
Bank. On the same day Pintard purchased of the said Smith
for the sum of $1260, twelve other lots of ground in the same
village of Jamaica, and took from Smith and wife a convey-
ance to himself as trustee for his two infant granddaughters,
Isabella Fleming Servoss and Elizabeth Pintard Servoss, with
a similar power to sell and convey. Thomas L. Servoss, the
father of the infants, furnished the principal part of what con-
sideration money was paid down; but a small part was derived
from money which Elizabeth had in the Savings Bank. The
bill shows that the whole of the above mentioned lots, as well
those conveyed in trust for the girls, as those conveyed in trust
for the boys, were purchased of Smith at the *same time*, and
that Pintard gave a mortgage upon the whole of said lots to
secure $1848, of the purchase money of the whole; bearing six
per cent. interest. Subsequent to the execution of the mort-
gage, Pintard agreed to pay seven per cent. interest, instead of
six, and did pay it during his lifetime. Charles Smith assigned
the mortgage to Abraham Van Wyck, who assigned it to the
complainant on the 10th day of November, 1844. The bill in
this cause was filed for the foreclosure of that mortgage. The
infant *cestuis que trust*, with Thomas L. Servoss and wife,
their father and mother, with others, were made parties defen-
dants. On the 8th of November, 1842, John Pintard, under
the power contained in the deed of the 48 lots to him in trust
for his grandsons, conveyed in fee to Nathaniel Kimball 24 of
the 48 lots; who afterwards transferred the same to one Read.
Pintard died on or about the 20th day of June, 1844, having
made and published his will, by which he gave the whole of
his property to his daughter Louisa Servoss, the wife of the
said Thomas L. Servoss. On the 24th of March, 1845, the
complainants, at the request of Thomas L. Servoss, and from
ignorance that the mortgaged premises had been conveyed to
Pintard in different parcels, released to Read, the 24 lots from

the operation of the mortgage. The mortgage recites that the property was conveyed to the mortgagor by two separate deeds, in trust for different persons.

The defendants, Isabella Fleming Servoss and Elizabeth Pintard Servoss, by their guardian ad litem, put in separate and special answers to the complainants' bill, and John Pintard Servoss and Elias Boudinot Servoss answered jointly, by their guardian ad litem. The complainants replied to their several answers, and proofs were taken by them. The other defendants suffered the bill of complaint to be taken as confessed by them: Thomas L. Servoss and his wife, after an appearance, and Selover and wife for want of an appearance. The bill of complaint, after stating the purchase by Mr. Pintard, and his taking two separate conveyances for the mortgaged premises, proceeded to set forth the bond and mortgage, in the usual manner, and prayed for a sale of the mortgaged premises, except the 24 lots sold by Pintard in his lifetime to Kimball, and which the complainants had released from the lien of the mortgage. The guardian ad litem for the granddaughters of the mortgagor, in his answer in their behalf, set up as a defence that this release was detrimental to their interests, inasmuch as the effect of it was to throw a larger portion of the burden of the mortgage upon their lots than they should equitably bear. The cause was referred to the assistant vice chancellor for hearing and decision; who made a decree declaring that John Pintard took no estate in the premises in question; and that the mortgage executed by him to Smith was invalid and of no effect; and directing the complainants' bill to be dismissed, with costs. From that decree the complainants appealed.

The following is the opinion delivered by the assistant vice chancellor.

A. L. ROBERTSON, A. V. C. The two conveyances made in 1836, to John Pintard, in trust for his two grandsons and his two granddaughters, vested the legal estate in them. Section 45 (1 *R. S.* 727,) provides that every estate or interest in land shall be deemed a legal right, except otherwise provided for.

Section 49 provides that where a disposition of lands is made to one to the use of, or in trust for, another, no estate or interest, legal or equitable, shall vest in the trustee; and section 46 provides that where a person is entitled to the possession and profits of land, he shall be deemed seised of a legal estate of the same duration. As, therefore, these infants had an interest which was neither a prescribed trust nor power, and was not contingent, it must have been a legal estate. As Mr. Pintard took no estate, he had no right to either possession or profits, which these infants alone must have had, and therefore they took an estate in fee.

Mr. Pintard having no estate in the lands, the mortgage executed by him to the grantor, and since assigned to the complainants, has no effect by reason of such supposed interest. Nor was it a good execution of the power to sell, which was not for the purpose of raising a specific sum, but to convert the land into money. In no wise, therefore, did this instrument create a lien on the land. Probably the original grantor of the land had a lien for his unpaid purchase money, which might be enforced by a sale of the premises, but the bill does not make a case for such relief, and it is possible, if it did, the defendants might have alleged that some other security had been taken and the lien in equity waived.

The bill, therefore, must be dimissed with costs, without prejudice to the complainants' right to file a new bill on proper grounds.

*Geo. Case*, for the appellants. The infant defendants could take no estate in the mortgaged premises save through and by means of Mr. Pintard, the immediate grantee and mortgagor; and he being the legal conduit pipe through which their beneficial interest flowed, they could receive no more or other interest than he suffered to pass: nor can they claim the benefit of the trust without the power to sell with which it is coupled. The trustee being the legal conduit through whom the cestuis que trust took their beneficial interest, he must have been, in the first instance, the recipient of the legal estate; and though it

might not vest in him as a permanent title, yet it was long enough in him to enable him to execute the mortgage, leaving the equity of redemption to vest in the cestuis que trust. The 49th section of the statute (1 *R. S.* 722) does not declare that the trustee shall not take any title; but that no estate or interest shall vest in him. And it has the same and no other effect than the statute of uses had. Before the statute of uses, the whole of the legal title was always in the trustee, whilst the beneficial estate was in the cestui que trust. That statute transferred the legal title over to the latter from the trustee, but only in such state or condition as he had it, and as the cestui que trust was entitled to claim in equity. But this case does not come within the 49th section, which declares that every disposition of lands shall be directly to the person in whom the right to the possession and profits shall be *intended* to be invested. For it was not by these conveyances intended that the right to the possession and profits of the land conveyed should vest in the infant defendants; (1.) Because they were infants; (2.) Because there were no profits; (3.) Because Servoss, the father, was to keep the possession and manage the whole in the name of the trustee. But this was an express trust within the 55th section of the statute, created for the purpose of satisfying the charge on the mortgaged premises for purchase money, or to pay the seller as a creditor; and the 60th section vests the whole estate in the trustee, subject to the execution of the trust. A power to sell implies a power to mortgage, which is but a conditional sale, and must have been in the contemplation of the parties. (*2 Wend.* 492. *4 Kent's Com.* 14.) Express trusts are to sell lands for the benefit of creditors; to sell, mortgage, or lease for the purpose of satisfying any charge upon the lands. Lands may be charged in divers ways; as by grant of rents, by statutes, *judgments, conditions,* &c. (*Jac. Law Dict. Charge.* 3 *P. Wms.* 9, cited in *Williams* v. *Woodward, 2 Wend.* 492.) It is a good execution of a power if it pursue *the intent and design, though not according to the direct* terms of it. (*Sugden on Powers,* 446, 449.) In the construction of a deed it is a well settled principle to lean against an

Coutant *v.* Servoss.

interpretation that creates a forfeiture. (*Jackson* v. *Topping*, 11 *Wend.* 388.) If a deed cannot operate in the manner intended by the parties, such a construction should be given that it may operate in some other manner. (*Jackson* v. *Blodget*, 16 *John. Rep.* 172.) But the mortgagor intended to act under the power in the mortgage; as he terms himself "trustee with power to sell;" and the mortgage was a necessary conveyance, without which the property could not be had; and within the express language of the power to execute necessary conveyances in the law, &c. the power to sell was inseparably connected with the trust, and they must stand or fall together. In the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate or interest in land, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument and is consistent with the rules of law. (1 *R. S.* 2d ed. 740; 3d ed. 33.) According to the doctrine declared in *Stow* v. *Teft*, (15 *John. Rep.* 458,) the conveyance and the mortgage for purchase money having been executed simultaneously, are to be taken and considered in connection as forming parts of the same agreement, and it makes no difference that they are in form two distinct instruments. This doctrine leads to the conclusion that the mortgage in such case may be considered as incorporated in the grant. And it must then operate as a condition of the grant, and so a specific charge on the land granted. This condition is binding on the cestuis que trust, although infants. (*Note* 2, *at p.* 342 *of* 2 *Vern. R. case* 317.) In this view it is immaterial whether the conveyances from Smith and wife vested the legal title in Pintard, or in his grandchildren. Or the mortgage may be regarded as a certificate under the hand and seal of the trustee, witnessed by the actual purchaser (Thomas L. Servoss,) that so much of the purchase money was due and unpaid. The mortgage being so subscribed and witnessed, it comes within the provision of the case of *Lee* v. *Porter and Stiles*, (5 *John. Ch. Rep.* 268.) This instrument constituted an equitable lien on the property purchased, if it is only to be considered in the

light of an agreement for a mortgage. In the *matter of Howe,* (1 *Paige,* 129,) Chancellor Walworth decided, on the authority of the English cases, that an agreement for a mortgage was in equity a specific lien on the land. And according to the doctrine of mortgages held in courts of law, it is not necessary that the mortgagor should have the legal title in him; as it is not conveyed by the mortgage to the mortgagee. He takes only a chattel interest. (11 *John. Rep.* 534.) The mortgagee of a term is not even the assignee of the term. (*Astor* v. *Hoyt,* 5 *Wend.* 603.) It is a well settled rule, says Chancellor Kent, in *Garson* v. *Green,* 1 *John. Ch. Rep.* 308,) that the vendor has a lien on the estate for the purchase money. Prima facie the purchase money is a lien on the land, and it lies on the purchaser to show that the vendor agrees to rest upon other security. Taking a note for the purchase money does not affect the vendor's lien; and the vendor becomes a trustee as to that which is unpaid.

The assistant vice chancellor erred in considering the deeds and the mortgage as separate affairs, instead of regarding them as connected with each other and as parts of the same transaction. And he erred in deciding that the mortgage was not a good execution of the power to sell contained in the conveyances to the trustee, and that this power was not a power to sell conditionally, by way of mortgage, as well as to sell absolutely. (*Williams* v. *Woodward,* 2 *Wend.* 487, 492.) He erred also in deciding that the mortgage set forth did in no wise create a lien on the land. It was not necessary that the legal title should be conveyed, to make it a binding lien on the premises in question. (*See the matter of Howe,* 1 *Paige,* 129; *Lee* v. *Porter and Stiles,* 5 *John. Ch.* 268.) And he erred in deciding that the bill did not make a case for relief on the ground of unpaid purchase money. For after fully and truly stating the transaction, as it existed in that respect, the bill "prays the aid of this court in the premises," and "such further or other relief as the nature of the case may require," &c. This prayer was sufficiently broad. (1 *Hoff. Ch. Prac.* 50, *n.* 2.)

Coutant *v.* Servoss.

*Charles Edwards*, for the defendants John P. Servoss and Elias B. Servoss. I. The first mentioned deed of the 1st July, 1836, vested the lots embraced thereby in these infant defendants, and the power or trust to sell given therein to John Pintard was invalid under the 1 *R. S.* 728, § 49. II. Even supposing the trust valid, yet John Pintard could not sell, save for full value. III. And even, again, supposing the trust valid, yet John Pintard died ; and as no trustee afterwards was appointed, therefore no after act of the mortgagor or a third party could affect infant owners. The complainant had no right to listen to any request of Mr. Thomas L. Servoss and wife as to releasing any lots. The court have a right to consider, under this bill, that the sale to Kimball was made or is to be subject to the mortgage. IV. In a case like this, where there were infant defendants, the complainants could not, except at their own risk, release, for a nominal consideration, and so sacrifice all of the infants' property by a foreclosure of the small remainder for the whole of the mortgage. V. The infant defendants had not power to sell their property : and cannot, therefore, be affected without the concurrence of a court, and through a guardian. VI. As Kimball is not a party and the complainants have chosen to volunteer a release, (for Mr. T. L. Servoss' interference does not make it less voluntary,) and as the complainants have filed such a bill as they themselves have chosen, they must do the only justice which such a suit will justify ; that is, by taking into the account of the mortgage the twenty-four lots. These infant defendants have a right to claim that the twenty-four lots be sold, or, as against the mortgage, be taken at value. VII. In this case, the properties of two distinct classes of infants are mortgaged for one undivided sum ; and a mortgagee can never be allowed, without consideration, to release a great part of the lots in one class, and then foreclose as to all that remains, for the whole of the mortgage. In this way, one set of infants might get their properties clear of the mortgage, or nearly so, without bearing their share of the charges. VIII. The bill was rightly dismissed by the assistant vice chancellor. But, supposing it were kept in court, then a referee

should ascertain the proportions of the mortgage moneys which should respectively attach upon the different properties, taking as a basis, the purchase moneys $1380 and $1260; then, allow from that of the $1380, the value of the 24 lots sold to Kimball; and let the remaining lots, held by each set of infants, be sold only for the particular amount or balance so found as attaching respectively to each. IX. The complainants have, by releasing, admitted payment *pro tanto.* X. John Pintard had not the power to bind the infants' property to the payment of an addition of one per cent interest, (the original mortgage being for six per cent.) The bond securing the mortgage was his own personal bond, and he may, perhaps, by an endorsement, bind *himself* to pay such one per cent, but not the *cestuis que trust* or their trustee. XI. If the complainants could be allowed all they require, it would only be by the making Kimball a party and by connecting the special matter and a special prayer with the ordinary bill of foreclosure; and, perhaps, it would have to be coupled with a cross-bill by Kimball. XII. The decree appealed from gave the complainants leave to file a new bill; and instead of taking advantage of this, they appeal. And when this is coupled with so faulty a bill and case, the present court should dismiss the appeal imperatively, with costs.

*R. F. Winslow,* for the defendants Isabella and Elizabeth Servoss. I. The operation of the deeds given to Pintard, as trustee for his grandchildren, was to vest the land in them. The trusts not being authorized by the statute, Pintard took no estate, legal or equitable. The language of the statute is "no estate legal or equitable shall vest in the trustee." (1 *R. S.* 728, § 49.) If the statute referred to is to receive a strict construction, the mortgage of Pintard did not bind the land, and cannot now be enforced against it. The deed of conveyance did not vest a particle of interest in the land, either legal or equitable, in Pintard. Therefore there was nothing for his mortgage to operate upon, and the grantor, Smith, had no remedy but to apply to this court to correct the mistake; or, he might enforce his claim as an equitable lien upon the land for

Coutant *v.* Servoss.

part of the consideration money. The bill should therefore be dismissed. II. If the mortgage is a valid one, and binding upon the land, then the lots of each. set of grandchildren are liable but for their proportion of the mortgage ; and upon a bill filed to foreclose the mortgage, the court will, upon principles of apportionment, compel each set to contribute its proper share. (*See* 1 *Story's Eq. Jur.* 448, § 484, *et seq.*) If either set should pay off the whole mortgage they would be entitled to contribution from the other. (*Id.* § 495.) And in order that they might compel such contribution out of the lots of the ˙others, they would be entitled to be subrogated in the place of the mortgagee, by an assignment of the mortgage for their benefit. (*Id.* § 638.) Or the mortgagee would, in a court of equity, be deemed to hold it in trust for them. They are to be regarded as joint sureties for each other, with all the rights of sureties ; and therefore, upon well settled principles of equity, a release of the land of the one would also release the land of the other, *pro tanto.* (*Id.* § 498, *a. See also Patty* v. *Pease,* 8 *Paige's Rep.* 277 ; *Gouverneur* v. *Lynch,* 2 *Id.* 300 ; *Stuyvesant* v. *Hone,* 1 *Sand. Ch. Rep.* 423.) It follows that if 24 of the boys' lots have been released, the girls' lots are discharged *pro tanto.* And if they have *not* been released, then the girls have a right to insist upon the whole being included in the bill of foreclosure. III. The 24 lots have *not been* released. (1.) The conveyance, by Pintard, of the 24 lots, was a nullity, and no estate vested under it in Kimball. Read could take no title through Kimball. (2.) The release of the 24 lots to Read could have no operation ; he having at the time no estate in the land. The trusts given to Pintard being void, the *power* which could only be supported as incident to the trusts was void also. It is impossible to separate the power from the trust. They must stand or fall together. It is either a power to sell for the purposes of the trust, (and then the rule applies that where the object for which a power was created fails or ceases the power ceases,) or else it is a beneficial power unconnected with any trust. It is perfectly clear that it is not the latter, because it is evident that the intention of the deed is to convey the lots

for the benefit of the grandchildren.   This intention must govern, and Pintard can take no power inconsistent with it.   If the power is a power in trust, it is void in its creation.   There is no real distinction between a conveyance to A. in trust for B., and a conveyance to B. with power of alienation in A. for B.'s benefit.   In the first case the legal estate is in A., but B. is entitled to all the benefit from it, and may control it in equity.   In the second case, the legal estate is nominally in B., but in reality it is in A., and B. has nothing but an equitable estate, because A., by means of his power, can control the legal estate, and B. cannot control the legal estate, inasmuch as the exercise of A.'s power would defeat any conveyance which B. should make.   B., strictly speaking, has nothing but an equitable estate, because he must resort to equity to restrain the exercise of A.'s power, in order to make any substantial transfer of his legal estate.   His conveyance of his legal estate, with A.'s power hanging over it, would be a mere conveyance of the shadow without the substance.   The statute intended to abolish these equitable estates created by means of mere passive trusts, whether such trusts are made to assume the shape of powers or the shape of trusts.   If the power to Pintard is valid, then the statute abolishing trusts can, without difficulty, be evaded by conveying the legal estate directly to the person intended as the beneficiary, and giving an unlimited power in trust to the trustee to sell for the benefit of the person to whom the legal estate is given.   The power given to Pintard being void, it follows that nothing passed under his deed to Kimball; that the release to Read, whose title was derived from Kimball, was also a nullity, and that the 24 lots still remain subject to the mortgage.   The lots of the grandsons cost $1380.   The lots of the granddaughters cost $1260.   This is the only evidence before the court of their value at the time when they were conveyed by Smith.   And this forms the basis upon which the proportion of the mortgage to be borne by each set is to be estimated; which estimate must be founded upon their value at the time they were so conveyed.   (*See Patty* v. *Pease*, 8 *Paige's Rep.* 280.)

The grandsons' lots should pay $\frac{13380}{26400}$ of the amount due upon the mortgage. The granddaughters' lots should pay the remainder, which is $\frac{12600}{26400}$ of the amount due. Under this view of the case, the infants, Isabella and Elizabeth, claim that the cause be directed to stand over in order that the bill may be amended so as to include all the mortgaged premises, and that the proper parties be added; or that it be dismissed without prejudice to the complainants' right to file a new bill against the whole of the mortgaged premises. IV. If the power to Pintard was a valid one, and the 24 lots have been actually released from the mortgage, then the infants, Isabella and Elizabeth, claim that their lots shall be sold separate from the lots of their brothers, and that they shall be subjected to the payment of but $\frac{12600}{26400}$ of the amount due upon the mortgage, and costs. It is impossible to ascertain the value of the released lots, and therefore Isabella and Elizabeth cannot be charged with any deficiency arising on the sale of their brothers' lots. V. The complainants, in their bill, deny that they knew that the mortgaged premises were conveyed by two separate deeds. It is not material whether they had actual notice or not. The mortgage and deeds were contemporaneous. The mortgagee of course had actual notice, because he gave the deeds; and his assignees are chargeable with any notice to him. Besides, the mortgage itself recites the fact. The deeds and mortgage were also *recorded*, and the record is a constructive notice to subsequent purchasers. The case is not analogous to *Stuyvesant* v. *Hone*, (1 *Sand. Ch. Rep.* 423.) In that case the mortgage was taken before the conveyance. VI. No trust could result in favor of Thomas L. Servoss by reason of his having paid the consideration money. Even at common law, no trust would result in favor of a parent paying the consideration for a child, because the relationship was regarded as a sufficient consideration, and the transaction would be considered as a gift from the father. But the revised statutes (1 *R. S.* 722, § 51,) place the matter beyond a doubt. VII. It appears in evidence that T. L. Servoss has paid a considerable sum of money on the bond and mortgage, and perhaps he, himself, might claim

an interest in the bond and mortgage, to the amount paid, so as to enable him to pay off the remainder and have an assignment of the whole; but the complainants cannot force him to do so. If Servoss chose to give the money to his children he had a right to do so; and if *he* makes no claim for what he has paid, the complainants cannot. Even allowing that Servoss has some interest in the land, by reason of what he has paid upon the mortgage, we do not see that the complainant can reach it in this suit, because no such claim is made by the bill; and, moreover, attached to the subpœna served upon Servoss and wife, is a notice under the 133d rule of the court of chancery, that the complainant makes no personal claim upon either of them. VIII. The agreement by Pintard to pay seven per cent interest was a *nullity,* as far as the mortgage is concerned.

*By the Court,* STRONG, P. J. There is nothing to show that the late John Pintard was a general trustee for his infant grandchildren, who are defendants in this cause. The presumption is that the trust was created by the deeds from Charles Smith and wife, which define its nature and extent. Those deeds purported to convey the lands in fee to Pintard, in trust for his different grandchildren, and to confer upon him full power and authority to grant, bargain, sell and convey the same, and to make and execute the necessary conveyances, for their benefit. The defendants' counsel contend that these terms did not confer a power to execute a mortgage. That is true; and if the mortgage had been an insulated transaction, it would have been invalid. It has been held by some judges that a power to sell includes a power to mortgage. (3 *P. Will.* 9. 2 *Wend. Rep.* 492.) But that does not comport with the meaning of the terms; whether taken literally or according to their legal interpretation. It has been supposed that a power to sell confers a power to mortgage, on the ground that the greater includes the less. That must be taken with this qualification, however, that the less must be of the same character with the greater, and essential to its execution. Were it otherwise, the power to sell might authorize the donee to make any

less disposition of the land, such as granting leases, cutting down timber, or converting meadow into woodland. It has never, I believe, been contended that such dispositions would be authorized by the general power. A mortgage is now considered as a mere pledge or security for money. It is not a sale nor any part of it. It is not even a conditional sale; for that imports that the title would vest on the happening of the conditions. That is not so in the case of a mortgage; there no title vests until a subsequent sale is actually made. The distinction between the two runs through a large class of cases, and is well settled. They are cited in the very able opinions in manuscript, of Judges Betts and Emott, in the case of *Land* v. *Wickham*, and the elaborate argument of the counsel for the complainant in that cause. The case in 2 *Wend.* was overruled by the decision of the late supreme court in *Bloomer* v. *Waldron*, (3 *Hill's Rep.* 361;) where the late Judge Cowen discusses the subject much at large, and with his usual ability. He cites 1 *Sudg. on Powers*, 538; 1 *Pow. on Mort.* 61, and 2 *Chance on Powers*, 388. These cases are explicit that the power to sell, when, as in this case, it is general and unqualified, does not include the right to mortgage, and this is in accordance with the well known rule that powers should be construed strictly.

It is not stated expressly in the bill, nor proved by the testimony, that the deed and mortgage were executed simultaneously, and were but one transaction. But as the mortgage was confessedly given for the unpaid part of the purchase money, and as it is usual in such cases that the execution of the security immediately follows that of the deed, it is fair to presume that all the papers were executed together. Indeed that fact is conceded by one of the counsel for the defendants, in his points submitted to the court. The rule in such cases is that the whole is considered as one transaction. (*Stow* v. *Tifft*, 15 *John. Rep.* 458. *Jackson* v. *Austin, Id.* 477. *Van Horne* v. *Crain*, 1 *Paige*, 455.) Taking the whole together, the vendee acquires only the equity of redemption. He must take that, if the transaction amounts to any thing. It was so decided by

Chancellor Walworth in *Lynde* v. *Budd*, (2 *Paige*, 191.) There the purchaser, who gave a mortgage for the purchase money when he took the deed, was an infant, and of course could not execute a valid mortgage *per se*. The chancellor decided that the infant could not avoid one part and affirm the other. If the same rule is applied to this case, and there is every reason why it should be, the vendees cannot, nor can any one for them, take the land and repudiate the mortgage. They either hold the land subject to the mortgage, or they do not hold it at all. In neither case can they object to the sale for which the plaintiffs ask. The trustee has not, therefore, either sold or incumbered any estate which he acquired for the cestuis que trust. If a sale should be made under the mortgage, that will be in consequence of a defect inherent in the title which they acquired. As much so as if the land, when purchased, had been subject to a prior mortgage. There is nothing to show that the trustee had not the power to purchase an incum- bered estate, or to qualify it in securing the purchase money. On the contrary, the presumption arising from the whole trans- action is that he had such power.

It follows from the principles that I have laid down, that the mortgage acquires validity solely from the consideration that it was a part of the same transaction with the conveyances. It is a necessary consequence that although it is a joint instru- ment including the lands conveyed in two separate deeds to the two grandsons and the two granddaughters respectively, yet it is effectual, and must operate against them separately, The lands purchased for the granddaughters are bound for the unpaid part of their purchase money only. The same is true in reference to the lands acquired for the use of the grandsons. There is nothing in the writings, or in the evidence, to show that it was agreed, as a part of the same transaction, that they were to be mutually security for each other. Nor is there any equitable consideration which should carry it thus far.

The lands conveyed to Pintard as trustee for his grandsons, which have not been released, are bound for that part of the purchase money for them which still remains unpaid, notwith-

standing the deed for the residue in fee to Nathaniel Kimball. It is unnecessary, and would not be proper, to pass upon the question raised as to the validity of that deed, as Kimball is not a party, and the plaintiffs do not ask for a sale of the lots conveyed to him. A release of a part of the mortgaged premises does not in any manner affect the lien upon the residue, as between the original parties. So far as it relates to them, every part of the mortgaged premises is bound for the payment of the whole debt. There may be different equities between subsequent purchasers or incumbrancers, which may qualify the right of the mortgagee, or his assigns, to release a part of the premises, and retain the remainder as security for all the unpaid money, but it is sufficient to say that such equities cannot be claimed here.

The engagement to pay an additional rate of interest was obligatory upon Pintard alone. He had no authority, from any thing appearing in this case, to bind the cestuis que trust to do that by any arrangement made subsequent to the purchase. Although the main position taken by the assistant vice chancellor, that the interest acquired in the lands by the purchasers vested in the infants, may have been correct, and we think it was, yet as that was only the equity of redemption, and the mortgage was therefore valid, we think he erred in dismissing the bill.

A decree must be entered declaring that the lands conveyed by the deed to Pintard, as trustee for the granddaughters, are bound for that part of the purchase money for those lands which still remains unpaid, with interest at the rate of six per cent.; and that such of the lots conveyed in the deed to Pintard as trustee for his grandsons, as have not been released to Rogers, are bound for the unpaid part of the purchase money for all the lands thus conveyed for the use of the grandsons, with interest at the same rate, and directing that such lands be sold in satisfaction of the amounts secured upon them respectively, still remaining due, and the complainants' costs in this suit to be borne by each purchaser equally. And it must be referred to some suitable person to ascertain and report the amounts due upon the respective purchases.